# Richmond.

## PAYNE v. TANCIL.

### MARCH 29, 1900.

1. SLANDER—*Colloquium—Words Actionable Per Se.*—Words are actionable, without a colloquium, if they consist of a statement of facts or matters which clearly and unequivocally impute to the party charged a criminal offence involving moral turpitude, or which would subject him to an infamous punishment. It is not necessary that they should make the charge in express terms. It is enough if taken in their plain and proper sense they would naturally and presumably be so understood by those who heard them.

2. SLANDER—*"Keeping" a Woman.*—To say of a man that he is "keeping" a woman imports in the connection in which it is used in this case that he has criminal intercourse with her.

3. SLANDER—*Office of Innuendo—Adultery or Fornication.*—The office of an innuendo is to designate, not to enlarge, the meaning of the words spoken, and in this State it is wholly immaterial whether the designation imputes to the plaintiff adultery or fornication, as each is equally punishable under section 3786 of the Code.

4. SLANDER—*Words Actionable Per Se—Innuendo—Surplusage.*—If words spoken are *per se* actionable, the fact that the innuendo enlarges their meaning and attributes to them a signification they do not bear, does not render the count demurrable. If the words spoken *per se* impute an infamous crime punishable by law, the innuendo may be rejected as surplusage; if they do not, an innuendo cannot aid them.

5. SLANDER—*Common Law and Statutory—Different Counts—Common Law Slander Declared on as Insult.*—Common law slander and the statutory action for insulting words cannot be united in the same count of a declaration; but although the words spoken be actionable at common law, they may also be declared on under the statute if the declaration or count satisfactorily shows that it was intended to be framed under the statute for insulting words, and not for common law defamation. All common law defamations are insults, and many of them are sometimes more.

Error to a judgment of the Law and Equity Court of·the city of Richmond, rendered June 10, 1899, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Geo. D. Wise* and *A. B. Guigon,* for the plaintiff in error.

*Smith, Moncure.& Gordon* and *Meredith & Cocke,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action for defamation. The declaration contains two counts, the first of which is a common-law count, and sets out the words complained of, as follows:

" ' Mrs. Bowler has two men between her and Mr. Bowler' (meaning her husband), 'Dr. Tancil,' (meaning the plaintiff) 'being one of them,' (meaning that the plaintiff was committing adultery with Mrs. Bowler); 'that he' (meaning the plaintiff) 'was keeping Mrs. Bowler' (meaning that he was committing adultery with her); 'he' (meaning the plaintiff) 'is using Mrs. Bowler' (meaning that the plaintiff was committing adultery with Mrs. Bowler), 'and Bowler is running around like a little poodle dog with not sense enough to see it. Tancil' (meaning the plaintiff) 'drives to Bowler's house, where Mrs. Bowler lived, as often as his horse goes to the stable.' "

The question is, are these words *per se* actionable? · Words are actionable without a colloquium if they consist of a statement of facts or matters which clearly and unequivocally impute to the party charged a criminal offence involving moral turpitude, or which would subject him to an infamous punishment. *Mosely* v. *Moss,* 6 Gratt. 549; Cooley on Torts, 229-230; Newell on Slander, &c., sec. 17.

In determining whether or not the language does impute a criminal offence, the words must be construed in the plain and popular sense in which the rest of the world would naturally understand them. It is not necessary that they should make the charge in express terms. It is sufficient if they consist of a statement of matters which would naturally and presumably be understood by those who heard them as charging a crime. *Robert* v. *Camden*, 9 East. 95; *Walton* v. *Singleton*, 7 Serg. & R. 449; *Downing* v. *Wilson*, 36 Ala. 717; Newell on Slander, p. 155; Townsend on Slander, sec. 133 (4th ed.).

It is difficult to conceive how the charge that the plaintiff "was keeping Mrs. Bowler," when taken in connection with the other words spoken, or considered by themselves, could have been understood by hearers in any other sense than that the plaintiff was guilty of criminal intercourse with her. If they did not mean that, what did they mean? The words "keep" or "keeping" have no doubt several meanings, but their signification in a particular case depends upon the context, the words with which, or the circumstances under which, they are used. But when it is said in reference to a woman that a man is "keeping her," or of a man that he is "keeping a woman," the ordinary and popular construction of that language is that the relation between the parties is one which involves criminal intercourse.

In the case of *McBrayer* v. *Hill*, 4 Iredell (Law), 136, the words spoken were that " he (the plaintiff) kept McBrayer's wife." The word "kept" used in that connection, said Chief Justice Ruffin, had a common and well established sense and denoted habitual and criminal carnal connection. " This," he said, "seems to us the natural import of the words in themselves, or as the people in the country would universally understand them."

In *Downing* v. *Wilson*, 36 Ala. 717, it was held that to say of a woman that a certain man "keeps her" involves a charge of illicit sexual intercourse when the words are understood in their

ordinary popular acceptation, and are *per se* actionable.  See, also, *Carslake* v. *Mapledoram,* 2 Term. Rep. 473.

There is no averment in the count that either the plaintiff or Mrs. Bowler were married, although it might be inferred that the latter was, yet the *innuendo* makes the words spoken impute the crime of adultery to the plaintiff.  This, it is argued, renders the count demurrable because the *innuendo* imputes a crime to the plaintiff which is not justified by the averments of the count, nor by the words spoken.  This view cannot be sustained.  The office of the *innuendo* is to designate, not to enlarge, the meaning of the words.  *Mosely* v. *Moss,* 6 Gratt. 549-550.

It was wholly immaterial for the purpose of sustaining this action whether the offence charged was adultery or fornication. Both are made crimes by section 3786 of the Code.  The charge made was a crime and therefore actionable, whether one or the other.  If our statute punished adultery only and not fornication, and in consequence thereof charging a person with fornication was not actionable, it would be necessary for the declaration to aver such facts as would show that the act charged was adultery.

If the words are *per se* actionable, the fact that the *innuendo* enlarges their meaning, and attributes to them a signification they do not bear, does not render the count demurrable.  When the words are set forth as having been spoken by the defendant of the plaintiff, the first question is whether they impute an infamous crime punishable by law.  If they do, an *innuendo* stating the same in other words is useless and superfluous; if they do not, such an *innuendo* cannot aid it.  Such *innuendoes* will not vitiate the declaration or count; the reason given being, that the words themselves imputing an infamous offence, the *innuendo* may be rejected as surplusage.  *Carter* v. *Andrews,* 16 Pick. 1; *Roberts* v. *Camden,* 9 East. 92; *Benaway* v. *Conyne,* 3 Chandler, 214, 221; *Thomas* v. *Crosswell,* 7 John. 264, 271;

*Walton* v. *Singleton,* 7 Serg. & R. 449; *Bourreseau* v. *District Evening Journal,* 63 Mich. 425; *Kraus* v. *Sentinel Co.,* 60 Wis. 430; Newell on Slander, p. 629, sec. 41 (2d ed.); Townsend on Slander, sec. 344.

The demurrer to the first count was properly overruled.

The objection to the second count is that the plaintiff has blended in it the common law and statutory causes of action. This it is settled cannot be done. *Hogan* v. *Wilmoth,* 16 Gratt. 80; *Chaffin* v. *Lynch,* 83 Va. 106.

In the case of *Hogan* v. *Wilmoth, supra,* it was held that when the plaintiff proceeds under the statute he must aver that the words from their usual construction and common acceptation are construed as insults, and tend to violence and breach of the peace, or else employ some other equivalent averment to denote that the words are actionable under the statute. This was done.

It is averred in the count under consideration, that the defendant spoke and published, of and concerning the plaintiff, the following scandalous, malicious, defamatory and insulting words, which the plaintiff avers, in the language of the statute, Code, section 2896, "are from their usual construction and common acceptation construed as insults, and tend to a breach of the peace," and that they were so construed by those who heard them. Then follows the insulting language complained of. It is true that the words set out are in part the same as those set out in the first count, which, as we have seen, are actionable *per se,* and constitute common-law defamation, and that the *innuendo* makes them impute to the plaintiff the commission of adultery.

All common-law defamations are insults, and many of them something more. *Mosely* v. *Moss, supra,* p. 547.

In *Chaffin* v. *Lynch, supra,* it was held that a publication containing insulting words may be declared on under the statute, although it is libellous at common law. It is equally clear that insulting words spoken, although they will sustain an action for common-law defamation, may also be declared on under the

statute.  But to do this, the count must satisfactorily show that it was intended to be a count under the statute for insulting words, and not for common-law defamation.  The count under consideration does this, and must be held to be a good count for insulting words.

The demurrer to both counts of the declaration was properly overruled, as was also the defendant's motion in arrest of judgment.

The judgment of the Law and Equity Court must be affirmed.

*Affirmed.*