# Staunton.

## S. H. KRESS & COMPANY, A CORPORATION, v. A. L. MUSGROVE.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*C. S. McNulty*, for the plaintiff in error.

*Hairston & Almond*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This was an action of trespass on the case brought by A. L. Musgrove against S. H. Kress, a corporation, to recover damages for false arrest and assault and battery. The notice of motion contains two counts. The first count charges that plaintiff "Through one of its agents, servants or employees * * * did, with force and arms, assault complainant with great force and violence seized and laid hold of the plaintiff, shook and pulled plaintiff about its store in the presence of his friends and acquaintances. * * * By reason of which plaintiff claimed to have sustained damages to the amount of $2,500.00." In the second count, the plaintiff charged that "S. H. Kress and Company assaulted, seized and laid hold of plaintiff with great force and violence and pulled him about the said store, dragged him along and down the aisles of the said store and did unlawfully arrest and detain the said plaintiff until the door of the defendant's store was reached when he was pushed and shoved into the street. By reason of which he was greatly humiliated and exposed to injury; that his credit and standing in the community was greatly injured."

The defendant appeared and plead not guilty, the case was tried by a jury and a verdict rendered in favor of the plaintiff in the sum of $750.00, upon which the court entered judgment.

The testimony for the plaintiff may be summarized thus: The defendant was the operator of a large five and ten-cent store in the city of Roanoke. The plaintiff, a young man of good character and an employee of the Appalachian Power Company, on the night of December 3, 1927, entered the store with the previously announced intention of buying a six foot ruler. He was accompanied to the store by a companion named Burnett. While standing in the aisle talking to an acquaintance, W. B. Johnson, a plain clothes watchman in the employ of defendant, came up to plaintiff, caught him in the back of the coat, pulled him around and said to plaintiff: "Come here." Johnson did not disclose his identity to plaintiff at the time he accosted him, nor did he inform him of the reason for ordering him out of the store. After walking a distance of approximately twenty-five feet, plaintiff said to Johnson: "What do you want?" Johnson replied: "You get out of here." Plaintiff disclaimed any improper conduct upon his part and requested that he be permitted to leave the store by way of the front door. This request Johnson denied, touched him on, or caught him by the arm and said: "No, you ain't, you are going out of this door," and "shoved" him towards the door. When they reached the back door of the store, Johnson put his hand on plaintiff and "shoved" him out of the store. In reply to the question of plaintiff: "Wait a minute, I want you to tell me what this is for," Johnson answered: "No argument," and slammed the door in plaintiff's face. Plaintiff further stated that immediately after the affair he came again

to the front door of the store and notified an employee of the store of the treatment he had received, but no apology had ever been offered him. This occurrence took place within a period of approximately five minutes. The plaintiff was corroborated in his version of the main affair by five disinterested witnesses. As a result of this alleged humiliating experience plaintiff testified:

"It made me feel, when I found out that he was putting me out; it made me feel like everybody was gazing at me, thinking that I was a rogue, or a thief, or shoplifting, or drunk or something, and I couldn't sleep at night and I cannot sleep now; and the last thing when I go to bed I think about how the people look at me and say: 'There goes the fellow that was throwed out of the store, he was drunk or he was a rogue.'

"Q. Did the people gaze at you in the store?

"A. Yes, sir.

"There were a number of people in there that you personally did not know?

"A. Certainly there was.

"Q. Have you ever been arrested for anything in your life?

"A. No, sir; I have not. This is the first time I have ever been into anything."

Johnson's account of the occurrence is as follows:

"Q. Now, Mr. Musgrove here claims that you took hold of him about, I think he fixed the time, about quarter to nine on the evening of December 3rd, in the store. Will you kindly relate to the jury now just as nearly as you can what took place on that occasion?

"A. Well, I expect it was in the neighborhood of between eight-thirty and nine o'clock that this gentleman and another man was standing at the counter

practically, I thought, molesting the girls or talking to them.. I expect they were there about ten or fifteen or twenty minutes and I passed a remark to them; I said: 'Boys, don't molest the girls like that' and the other gentleman that was with him, he turned and walked through the store and went out. Mr. Musgrove turned around and he said: 'I think you are a little too smart any way.' I didn't know what his name was but I said to him: 'I think the best thing for you to do is to go out of the store, and the quickest way is the best way,' so he said: 'I will go that way' and the store was crowded towards Campbell avenue, and I said: 'No, you are going out of the back door,' so he turned and I just reached and touched him by the arm and said: 'We will go out of the back door' and he started arguing, and I said: 'No argument at all' and when he went out he asked me out to argue it, and I said: 'No argument.' "

■ In his further examination in chief Johnson denied that he had pulled or "shoved" plaintiff at any time, but did state that he "took hold of his arm" and escorted him to the back door. Upon his cross-examination, Johnson enlarged his account of the occurrence by stating that when he warned plaintiff not to molest the girls, that plaintiff retorted: "You are too ——— fresh." In this statement he was contradicted by three witnesses introduced in rebuttal by plaintiff, as well as by two young lady employees introduced as witnesses for the defendant. The young lady whom Johnson claimed was molested by plaintiff was not introduced as a witness as it was alleged that she could not be located in the city. The record fails, however, to show the issuance of a subpoena for this witness and the legal presumption is that she would not have corroborated Johnson's statement had she been present.

■

Upon conclusion of the evidence the plaintiff offered and the court, over the objection of defendant, gave the following instructions:

"The court instructs the jury that neither malice, ill-will nor the slightest wrongful intention is necessary to maintain the action for false imprisonment, and that neither the good faith of the defendant or its employees will defeat the plaintiff's right to recover. Therefore, if you believe from the evidence that the plaintiff was wrongfully detained as defined in instruction No. 2, you must find for the plaintiff and fix his damages at such sum as will compensate him for the suffering, both mental and physical, which he sustained by such wrongful acts, not to exceed the sum of $2,500.00.

. 2. "The court instructs the jury that false imprisonment is the restraint of one's liberty, without any sufficient legal excuse therefor, by words or acts which he fears to disregard, and neither malice, ill-will, nor . the slightest wrongful intention is necessary to constitute the offense.

3. "The court instructs the jury that every person has a right to complete and perfect immunity from unlawful and hostile assaults, and that the purpose of the law is to establish such rules as shall constitute a complete protection against any violence whatever, whether perceptible injury results from it or not. Therefore, if, from the evidence, they believe that the defendant through its servant or agent committed an unjustifiable and unlawful assault and battery upon the plaintiff, they must bring in a verdict for the plaintiff, whether he suffered any physical damage or not."

The objection urged by defendant to instruction number one is that it directs the jury to assess damages

for mental as well as physical suffering, predicated upon the fact that plaintiff suffered physical damages, which is without evidence to support such a finding.

It is conceded that instruction number two is substantially correct, but it is urged that the evidence discloses that instead of being ejected from the store of defendant, plaintiff left same willingly and of his own accord; that the instruction is amenable to the criticism that it permits the jury to infer or imply that there was false imprisonment of plaintiff. These two assignments of error will be considered together.

The case at bar differs from the great majority of similar cases with which the courts are confronted in this respect: Usually the fact of actual confinement in prison is evidence, coupled with the fact of an assault committed upon the plaintiff; in this case it cannot be successfully contended that no assault was committed upon the plaintiff. The overwhelming weight of evidence is to the effect that he was "pulled" and "shoved" by defendant's watchman. Johnson himself acknowledges that he took plaintiff by the arm and led him to the back door of the store room. While the record fails to disclose that plaintiff was lacerated or bruised as a result of this harsh treatment, it does disclose that by reason thereof he was deprived of the boon of sleep. That wakefulness produces enervation of body and unfits one physically for the discharge of manual or mental activities is an experience too common to us all to need extended discussion. Then, too, it should be recalled that the jury, composed of men who oftentimes are not conversant with the abstruse refinement of legal technicalities, was engaged in the trial of a case in which it was clearly shown that the plaintiff was without fault. The notice of motion presented to the jury the combined actions of false arrest and assault and battery.

The trial court very properly gave to the jury that definition of false imprisonment approved by that eminent jurist and law writer, Judge Burks. In his work on pleading and practice, at page 192, we read:

■ "False imprisonment is restraint of one's liberty without any sufficient legal excuse therefor by words or acts which he fears to disregard, and neither malice, ill-will nor the slightest wrongful intention is necessary to constitute the offense."

■ To constitute false imprisonment it is not essential that a citizen should be confined in a common jail or placed in the custody of an armed guard; nor is he required to resist in order to maintain his freedom of locomotion. If under a reasonable apprehension that force will be employed unless he willingly submits, and he does submit to the extent that he is denied freedom of action, this, in legal contemplation, constitutes false imprisonment. That plaintiff was denied freedom of locomotion and right of action appears from the testimony of Johnson. When plaintiff requested that he be permitted to depart by way of the front door, Johnson denied him this right and privilege, and took him by the arm and ejected him from the store by way of the rear door. Whether the act of Johnson resulted from malice or ill-will is a matter of small consequence. To justify his conduct it must be shown that he had a sufficient legal excuse therefor. This has not been done.

■ While we have been unable to find any direct authority dealing with the extent to which physical injury must be shown before a recovery may be had upon a count in the declaration alleging physical injury where the proof fails to show actual laceration of the body, we are of opinion that such damages may be recovered. In the leading case of *Bolton* v. *Vellines,*

94 Va. 400, 26 S. E. 847, 848, 64 Am. St. Rep. 737, it appears that Vellines, an ex-police officer of the city of Norfolk, appeared upon the streets of the city in the uniform of a policeman, contrary to the ruling of the board of police commissioners. He was arrested, placed in a prison van, carried to the station house, searched and confined until discharged upon a writ of habeas corpus by the court. He thereupon instituted an action for false imprisonment against Bolton and Verdier, the officers who caused his arrest. Upon motion of plaintiff, the court gave this instruction:

"If the jury believe from the evidence that the defendants were guilty of the wrongful act or acts alleged in the declaration, they must award to the plaintiff such compensation in damages as he may prove for the loss of time, for the suffering, bodily and mental, sustained by reason of such wrongful act or acts, and for expenses incurred in procuring discharge from restraint, including a reasonable attorney's fee. And if the jury believe from the evidence the said wrongful act or acts to have been committed by the defendants with malice, they may also award to the plaintiff punitive damages."

In the opinion by the court, delivered by Judge Keith, it is held that this instruction is unobjectionable.

In *Jones* v. *Morris*, 97 Va. 43, 33 S. E. 377, the facts set forth are as follows:

"On the 8th of April, 1897, A. C. Jones sued out a warrant of arrest, in the city of Newport News, charging that J. C. Morris, of the city of Richmond, in the said city, 'did unlawfully $40.00 in current money of the United States of the goods and chattels of the said A. C. Jones, of the value of $40.00, take, steal and carry away.' Upon this warrant Morris was arrested

on the 10th of April of the same year; was, by the justice before whom the warrant was returnable, committed to a policeman of the city of Richmond, and was by the latter carried to the said city, and on the 12th of April, upon trial before the police justice of the said city, acquitted and discharged. Thereupon Morris instituted a suit against Jones for malicious prosecution, and upon the trial the jury found a verdict in favor of the plaintiff for $1,500.00, which is before us upon a writ of error sued out by the defendant."

The trial court instructed the jury that in assessing the plaintiff's damages they had a right to take into account, and the plaintiff was entitled to recover, compensation for his loss of time, injury to his reputation and for his suffering, both bodily and mental. The opinion, also delivered by Judge Keith, fails to disclose any objection urged to this instruction, though it does clearly appear that plaintiff did not suffer any bruises or lacerations of body.

For the reasons stated, we are of opinion that these assignments of error are not well taken.

It is also assigned as error that the verdict is contrary to the law and the evidence and that same is excessive. From what has been said, it follows that we do not agree with the contention that the verdict is contrary to the law and the evidence. If the cause of action had been based primarily on the false imprisonment count of the declaration and a verdict found in response thereto, under the proof adduced in this regard, we could agree with counsel that a part of the damages should be remitted. The jury, however, did not attempt, as they might have done, to apportion the damages, but found a general verdict in favor of the plaintiff, awarding him damages for all causes of com-

plaint set forth in the declaration. That the plaintiff had the right to combine the two causes of action in the same declaration cannot be questioned. No motion was made by the defendant to exclude the evidence relating to false imprisonment. The jury on the merits found "entire damages." The jury was well warranted in considering the acts complained of as one transaction.

In the view of the jury upon the conflict of evidence there was no legal justification of the assault committed by defendant's policeman. In this view we concur. When we consider further that the treatment accorded plaintiff occurred in the presence of a large number of people; that he was subjected to indignity and humiliation, we are bound by the finding of the jury, unless we can say that the jury has been influenced by passion or prejudice. Such a situation is not disclosed by the record.

In *Lorillard Company* v. *Clay*, 127 Va. 734 (Syllabus) 104 S. E. 384, it is said:

"There is no rule of law fixing the measure of damages in personal injury cases. That is a matter to be left to the sound discretion and judgment of an impartial jury, whose verdict will not be disturbed unless it appears that they have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case." The same rule applies in this case

There is no merit in the assignment of error.

Defendant also assigns as error the refusal of the trial court to give, upon its motion, eleven instructions. Taken as a whole, the instructions offered were in conflict with the view of the trial court as embodied in the instructions given for the plaintiff. Since we are of opinion as stated, that the instructions

given correctly stated the law of the case, it was not error to refuse the instructions offered by the defendant. The judgment of the trial court must be affirmed.

*Affirmed.*