## Richmond

ZAYRE OF VIRGINIA, INC. T/A ETC. v. CATHERINE GOWDY, AN IN-
FANT, ETC.

ZAYRE OF VIRGINIA, INC. T/A ETC. v. LINDA HAMPTON, AN INFANT,
ETC.

April 25, 1966.

Record Nos. 6169, 6170.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*John F. Rixey* (*Rixey and Rixey*, on brief), for the plaintiff in error.

*Arnold H. Leon* (*Bangel, Bangel and Bangel*, on brief), for the defendants in error.

I'ANSON, J., delivered the opinion of the court.

Plaintiffs, Catherine Gowdy and Linda Hampton, both infants, instituted these actions by their fathers and next friends against the defendant, Zayre of Virginia, Inc., trading as Zayre, to recover damages for insulting words uttered by defendant's agent while acting in the course of his employment and for false imprisonment. The two cases were consolidated for trial before a jury and resulted in a verdict for each plaintiff against the defendant in the amount of $750. Judgments were entered on the verdicts and the defendant is here on a writ of error.

Defendant contends that the court erred in holding that the evidence was sufficient to support the verdicts of the jury, and in granting and refusing certain instructions.

The evidence, stated in the light most favorable to the plaintiffs, shows that in the early afternoon of June 13, 1964, plaintiffs, Catherine Gowdy, aged 13, and Linda Hampton, aged 14, in company with Beth Williams, another young girl, entered Zayre's department store in the city of Portsmouth, Virginia, for the purpose of buying a bathing suit for Miss Gowdy. Miss Hampton's mother waited for them in her car which was parked in the store's parking lot. After purchasing the bathing suit Miss Gowdy asked the cashier if she could change into it in the store and was told to try the fitting room.

While Miss Gowdy waited at the fitting room, Beth Williams and Linda Hampton went out to the car and Miss Hampton picked up a small train case and a smock from the automobile and took it to Miss Gowdy. Upon being told that she could not use the fitting room unless a clerk was present, Miss Gowdy said she would change in the rest room, to which there was no objection. They went to the rest room where she changed into the bathing suit and put her smock on over it. She put the clothes she had been wearing in the train case, and she and Miss Hampton left the store.

When the two girls reached the sidewalk in front of the store, defendant's security officer, who was dressed in a police officer's uniform, called to the girls, "Hey, young ladies, let me see what you have in that suitcase." The girls encountered difficulty in opening the case and while they were thus engaged the security officer stuck his hand in the pocket of the beach jacket Miss Hampton was wearing, and found only a dime in the pocket. After the girls got the train case open the security officer searched it. While he was searching the train case Miss Gowdy told him that she had just bought a bathing suit and put it on in the store, and he said, "Well, where is the sales ticket?" The girls were unable to find the sales ticket due to their confusion and embarrassment at being stopped and searched on the sidewalk, where other people had gathered to look on. Then the security officer directed the girls to go back into the store and show him the lady who had sold the bathing suit. The girls testified that they did not want to go back into the store, but they were afraid not to follow the officer's instructions because he was dressed in a police uniform.

When they returned to the store the security officer asked the cashier if she had sold a bathing suit to one of the girls. She told him that she had sold the bathing suit "not more than five or ten minutes ago;" and after further conversation with the officer she repeated, "Believe me, I sold it to them not more than five or ten minutes ago." Then the girls were permitted to leave the store.

The security officer testified that he saw the girls enter the store some fifteen or twenty minutes earlier and neither girl was carrying anything in her hand. When he saw them leaving with the small "suitcase" he said, "Hey, young lady, do you have a sales slip for that kit?" After examining a tag on the kit he realized that it had not come from defendant's store. When he learned that one of the girls had purchased a bathing suit in the store and had put it on in the rest room, and since she was unable to show him a sales ticket for

the article, he asked them to go back into the store for the purpose of having the cashier verify the sale, if one had been made.

Defendant argues that the evidence was not sufficient to permit a recovery under the statute of insulting words, § 8-630, Code of 1950, 1957 Repl. Vol., which reads as follows:

"All words which from their usual construction and common acceptation are construed as insults and tend to violence and breach of the peace shall be actionable."

In order to determine whether words are insulting, all the surrounding facts and circumstances must be taken into consideration, and the whole case must be looked at in the light of its own particular facts. *Corr* v. *Lewis*, 94 Va. 24, 26, 26 S. E. 385, 386; 12 Mich. Jur., Libel and Slander, § 11, p. 50.

Words uttered by a person falsely conveying the charge of a criminal offense involving moral turpitude are insulting and actionable under the aforementioned statute and are considered to be libelous *per se* in an action for defamation at common law. *Payne* v. *Tancil*, 98 Va. 262, 263, 266, 35 S. E. 725; 12 Mich. Jur., Libel and Slander, § 10, p. 49.

In *Payne* v. *Tancil, supra,* 98 Va. at p. 264, 35 S. E. at p. 725, this Court said:

"In determining whether or not the language does impute a criminal offense, the words must be construed in the plain and popular sense in which the rest of the world would naturally understand them. It is not necessary that they should make the charge in express terms. It is sufficient if they consist of a statement of matters which would naturally and presumably be understood by those who heard them as charging a crime."

The words uttered by defendant's security officer, while he was engaged in the ordinary course of his employment and in connection therewith, carried an imputation that the two young girls had stolen merchandise from the store, and that he was accusing them of theft. Hence the evidence was sufficient to support the jury's finding that the girls had been falsely accused of larceny and that the words used by the security officer, from their usual construction and common acceptation, were insulting and tended to violence and breach of the peace.

Defendant says that the evidence was not sufficient to permit a recovery for false imprisonment.

False imprisonment is restraint of one's liberty without any sufficient cause therefor. It is not essential that a citizen be confined in

jail or placed in the custody of an officer. If a person is under a reasonable apprehension that force will be used unless he willingly submits, and he does submit to the extent that he is denied freedom of action, this, in legal contemplation, constitutes false imprisonment. To maintain an action for false imprisonment it is not necessary to show malice, ill will or the slightest wrongful intention, and neither the good faith of a defendant nor that of his employee will defeat a plaintiff's right to recover. *Montgomery Ward & Co.* v. *Wickline,* 188 Va. 485, 489, 50 S. E. 2d 387, 388, 389; *S. H. Kress & Co.* v. *Musgrove,* 153 Va. 348, 354, 356, 149 S. E. 453, 454, 455; *W. T. Grant Co.* v. *Owens,* 149 Va. 906, 921, 922, 141 S. E. 860, 865; Burks Pleading and Practice, 4th ed., § 142, pp. 251, 252.

When the two young girls left defendant's store they were accosted by a man in a police uniform. That in itself was enough to frighten and embarrass young girls of their age. He determined that the train case had not come from defendant's store, but asked them to open it. While they were attempting to do so, he put his hand in the pocket of one of the girls' jacket, obviously for the purpose of searching for merchandise he thought she had stolen. After the case had been opened he rummaged through it, and when the young ladies were unable to find the sales slip for the bathing suit which Miss Gowdy told him she had bought in the store and put on under her smock, he forced them to go back into the store to prove she had bought it. The evidence shows they went back into the store because the security guard was a person of authority and the young ladies were afraid not to follow his directions. They were deprived of their right of freedom of movement and the right to come and go as they chose. Hence whether the young ladies had been falsely imprisoned was a question of fact for the jury.

Defendant says that the court erred in granting plaintiffs' instruction No. 1. It reads as follows:

"The court instructs the jury that defendant, Zayre of Virginia, Inc., is liable for the action of its employee, J. T. Lacy, acting within the scope of his employment and in furtherance of Zayre of Virginia, Inc.'s business."

Defendant's counsel says the instruction told the jury that defendant was "liable" for the action of its employee and directed a verdict for the plaintiffs. The only objection made to the instruction before it was granted by the court was that it was "totally unnecessary in the case since the agency of Lacy and the defendant was not in question." He concedes that the objection now relied on was not

raised when the instruction was presented to the court and that it occurred to him later when he dictated his exceptions to the court reporter out of the presence of the court. This specific objection to the instruction was called to the trial court's attention for the first time on the hearing of the motion for a new trial, and the court held it came too late.

We agree with the trial court that the objection came too late. The trial court was not given an opportunity to consider the objection before the case was submitted to the jury and they had returned their verdict. Hence the objection and exception to the instruction will not now be considered by us. *Gaumont* v. *Highway Commissioner*, 205 Va. 223, 225, 135 S. E. 2d 790, 791, and the authorities there cited. See Rule 1:8, Rules of Court; also *Burk* v. *Huntington Development & Gas Co.*, 133 W. Va. 817, 58 S. E. 2d 574, 580, 581.

▇ Defendant says the court erred in refusing instructions C-1 and C-2.

Instruction C-1 reads as follows:

"The court instructs the jury that if you believe from a preponderance of the evidence that defendant's employee, acting within the scope of his employment, had probable cause to believe that a willful concealment of the goods of his employer had been committed by the plaintiffs and that the defendant's employee acted in a reasonable manner upon such belief, then the plaintiffs cannot recover and you should find your verdict for the defendant."

Instruction C-2 defined "probable cause."

Defendant argues that, assuming the evidence of the plaintiffs was sufficient to take their cases to the jury on the issue of false imprisonment, the court erred in refusing to grant the instructions because probable cause is a defense to false imprisonment.

*Montgomery Ward & Co.* v. *Freeman*, 199 F. 2d 720 (4th Cir., 1952), is relied on by the defendant in support of its argument. There the action against Montgomery Ward was for malicious prosecution and false imprisonment, and the trial court erroneously required the plaintiff to elect which count she would proceed under and she elected to proceed on the false imprisonment count. Judgment for the plaintiff was reversed and a new trial granted on the grounds that the instructions took away from the jury the question of the reasonableness of plaintiff's detention and required the jury to find for her even though they should find that the detention was made only for a reasonable time and in a reasonable manner. That case is not controlling here.

We said in *Montgomery Ward & Co.* v. *Wickline, supra,* 188 Va. at p. 490, 50 S. E. 2d at p. 389, that "In an action for false imprisonment, as distinguished from an action for malicious prosecution, the good faith of a defendant in causing the arrest, or probable cause therefor, is no defense to a claim for actual or compensatory damages sustained in consequence thereof." See also *Crosswhite* v. *Barnes,* 139 Va. 471, 485, 124 S. E. 242, 246, 40 A.L.R. 54; 22 Am. Jur., False Imprisonment, § 109, p. 424.

Probable cause may be shown in mitigation of exemplary or punitive damages in an action for false imprisonment. *Montgomery Ward & Co.* v. *Wickline, supra; Crosswhite* v. *Barnes, supra.* However, in the present case plaintiffs' damages were limited by the court's instructions to actual or compensatory damages only.

Defendant did not contend that probable cause was a defense to insulting words. Yet instruction C-1 would have told the jury, without distinguishing the charges of insulting words and false imprisonment, that if defendant's agent had probable cause to believe plaintiffs were wilfully concealing his employer's goods, and acted in a reasonable manner, they should find for the defendant.

Defendant also says that the refused instructions should have been granted under the provisions of § 18.1-127,[1] Code of 1950, as amended, 1960 Repl. Vol. However it did not rely on the language of the statute in the trial court as a reason for granting the instructions. Hence the applicability of the statute here need not be discussed.

We are of opinion, for the reasons stated, that instructions C-1 and C-2 were properly refused.

Accordingly, the judgments of the court below are

*Affirmed.*

---

[1] § 18.1-127. *Exemption from civil liability in connection with arrest of suspected person.*—A merchant, agent or employee of the merchant, who causes the arrest of any person pursuant to the provisions of § 18.1-126, shall not be held civilly liable for unlawful detention, slander, malicious prosecution, false imprisonment, false arrest, or assault and battery of the person so arrested, whether such arrest takes place on the premises of the merchant, or after close pursuit from such premises by such merchant, his agent or employee, provided that, in causing the arrest of such person, the merchant, agent or employee of the merchant, had at the time of such arrest probable cause to believe that the person committed wilful concealment of goods or merchandise.