195 N.J. Super. 590 (1984)
481 A.2d 294
JULIA HALL, PLAINTIFF-APPELLANT,
v.
JOHN HEAVEY AND ACME MARKETS, INC., A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 20, 1983.
Decided August 22, 1984.
*592 Before Judges BOTTER, PRESSLER and O'BRIEN.
Neil M. Cohen argued the cause for appellant (Gill & Cohen, attorneys; Nia H. Gill, of counsel and on the brief).
James P. Lisovicz argued the cause for respondents (Sellar, Richardson & Stuart, attorneys; James P. Lisovicz, on the brief).
The opinion of the court was delivered by BOTTER, P.J.A.D.
At trial, at the close of plaintiff's proofs, the trial judge dismissed plaintiff's action on defendants' motion. R. 4:37-2(b). Plaintiff's complaint asserted claims for defamation, invasion of privacy, and assault. The case was tried as if it included a count for false imprisonment, and that claim was also dismissed. This appeal followed, and we now reverse the dismissal of the defamation count but affirm the dismissal of the other claims.
Plaintiff, a long time resident of Montclair, testified that she regularly shopped at an Acme supermarket in Clifton. The store was operated by defendant Acme Markets, Inc. On September 3, 1981 plaintiff went there to buy two gallon bottles of spring water on sale. She was accompanied by her friend Ivy Cruickshank. Plaintiff asked Ivy to get the water while she waited in the car and she gave Ivy $1.10 for the purchase. Ivy came back and said she did not see any bottles of water in the store. Plaintiff and Ivy then returned to the store to look for the water. When they arrived at the location where the bottled water was kept they found none there. They left the store, without making any purchase, by walking through the aisle of a closed check-out booth. Plaintiff was carrying a pocketbook at the time.
Testimony of defendant John Heavey given in depositions was introduced by plaintiff. Heavey was the grocery manager and was in charge of the store on September 3, 1981. According *593 to Heavey's testimony, a cashier reported to him that a woman had pushed aside a candy rack, passed a register, and walked out of the store. Heavey asked if the cashier had seen the woman take anything and he replied that he did not, but that she was carrying a large bag. Heavey said there was nothing they could do, but he asked to be notified if the woman returned. Shortly thereafter the cashier told Heavey that the woman returned and that another woman was with her on the far side of the store in aisle #1. Heavey walked toward the aisle and saw plaintiff and Ivy coming out of the aisle. He observed them walk "through the check-outs and outside the store." Heavey followed them. Ivy entered a car and plaintiff was getting into the driver's seat when Heavey confronted her.
Ivy and plaintiff testified that there were people in the parking area when Heavey approached plaintiff. According to Ivy, Heavey said to plaintiff, "Open your pocketbook, open your pocketbook, I saw you take it." Plaintiff testified that Heavey said, "I saw you; I saw you take it off the shelf." She said he was screaming at her and she heard someone in the crowd say, "She stole something from the store." Although she first said Heavey "snatched" her pocketbook from her, when confronted with her prior testimony in depositions when she had testified that she gave her pocketbook to him, she said on cross-examination, "I gave it to him but he snatched it." She testified further, "I handed the bag to him and he snatched it out of my hands. So I gave it to him. I didn't wrestle for it." She also testified that Heavey never touched her.
In his deposition Heavey testified that he did not see the two women take anything from the store, nor did the cashier report that they had done so. He testified that he approached plaintiff and asked her if he "might look inside her pocketbook." He testified that he thought something may have been taken and he felt that he could ask plaintiff if she would open her pocketbook so that he could look into it. He denied accusing or indicating to plaintiff that he thought that she had taken anything, but he was looking for merchandise that may have *594 been taken from the store. Heavey found no merchandise in the purse and returned it to plaintiff. He made a note of the license plate on plaintiff's car and then returned to the store. According to plaintiff, Heavey was wearing an Acme uniform at the time.
Plaintiff then went back into the store to speak with Heavey. She said that she asked him to show her what she had taken from the store and he said in a nasty way, "I'm sorry." She said she asked for his name and the manager's name but he refused to give her that information.
Plaintiff claimed that she was slandered by Heavey in that he had, in effect, called her a thief in the presence of other people. She said she felt humiliated and hurt. However, no special damages were proved. The trial judge ruled that an imputation of shoplifting does not constitute slander per se because shoplifting is a disorderly persons offense and not an indictable crime. N.J.S.A. 2C:20-11(c); see N.J.S.A. 2C:1-4(a) and (b). Therefore, he ruled that without special damages plaintiff had not proved an actionable claim for defamation. Reliance was placed on Sokolay v. Edlin, 65 N.J. Super. 112, 121, (App.Div. 1961), in which the court said: "One who falsely, and without privilege to do so, publishes a slander which imputes to another conduct constituting a criminal offense is liable to the other, without proving special damages, if the offense charged is of a type which ... would be chargeable by indictment."
In our view a charge of theft can be slanderous per se whether or not the specific nature of the theft is designated an indictable crime or a lesser offense. Defamation is insult to someone's reputation and good name caused by uttering words which tend to hold plaintiff up to contempt, hatred, ridicule, aversion or disgrace. Prosser, Torts (4 ed. 1971), § 111 at 737-739. Because of the reluctance to accept the action of slander, the rule developed that the action would not lie without proof of special damages. Id., § 112 at 754. However, exceptions *595 were created to allow the claim if the "words clearly `sound to the disreputation' of the plaintiff," making them "defamatory on their face and actionable per se." Shaw v. Bender, 90 N.J.L. 147, 149 (E. & A. 1917). When words are uttered which are so injurious that the court will "presume, without proof, that plaintiff's reputation has been thereby impaired," the words are defamatory per se. Ibid. In this category are indictable offenses, such as larceny. Ibid. Other categories are the imputation of a loathesome disease, misconduct affecting one's business, trade, profession, office or calling, and, in some jurisdictions, serious sexual misconduct. Prosser, Torts, supra, § 111 at 754; 3 Restatement, Torts 2d, § 520 at 186 (1977).
For the purposes of the rule a distinction was once made between indictable crimes and lesser offenses. In its original form, § 571 of the Restatement of Torts required that the crime be "chargeable by indictment or its modern equivalent" as well as punishable by death or imprisonment otherwise than in lieu of fine. 3 Restatement, Torts, § 571 at 171 (1938). The present version of Section 571 defines the criminal offense as one that is "(a) punishable by imprisonment in a state or federal institution" or "(b) regarded by public opinion as involving moral turpitude." 3 Restatement, Torts 2d, § 571 at 186 (1977). The offense charged must be "criminal in character," and need not be of a type that is subject to indictment if it meets either of these tests. Id. at 187-188. The Restatment includes as examples of offenses of moral turpitude "letting a house for purposes of prostitution ... or uttering a bad check" which are not subject to indictment. Id. at 188, 190. Other charges that the Restatement deems actionable per se because they are offenses of moral turpitude include larceny, malicious mischief and indecent exposure. Ibid.
A number of cases in New Jersey have treated a charge of larceny as slander per se without regard to the value of the *596 property stolen. Shaw v. Bender, supra, held that "to call one a thief" is actionable because larceny, an indictable offense, is clearly imputed. 90 N.J.L. at 149. The goods stolen in that case were apparently of little value. Similarly, in Jorgensen v. Pennsylvania R.R. Co., 25 N.J. 541, 563-564 (1958), the accusation that plaintiff, an employee, had stolen company property, a quantity of ham wrapped in a napkin, was held to be defamatory per se. In Murphy v. Johns-Manville Products Corp., 45 N.J. Super 478, 488 (App.Div.), certif. den. 25 N.J. 55 (1957), a charge that an employee had stolen three wire brushes and 18 sheets of emery cloth was deemed actionable per se.
Under Title 2A, the crime of theft was a misdemeanor or high misdemeanor until 1972 when the theft of property valued at less than $200 was made a disorderly persons offense. N.J.S.A. 2A:119-2; N.J.S.A. 2A:170-30.1, both repealed; see State v. King, 164 N.J. Super 330 (App.Div. 1978), certif. den. 81 N.J. 54 (1979). Thus, when Shaw, Jorgensen and Murphy were decided the theft of property was a crime regardless of its value. Under Title 2C, thefts of goods worth $200 or more are crimes, but the theft of goods worth less than $200 is a disorderly persons offense. N.J.S.A. 2C:20-2(b). "Shoplifting" was a disorderly persons offense under Title 2A, N.J.S.A. 2A:170-98, and still is. N.J.S.A. 2C:20-11(c). For a definition of shoplifting see Annot., "Defamation: Actionability of Accusation or Imputation of Shoplifting," 29 A.L.R.3d 961, 963, n. 6 (1970).
For the purposes of the law of defamation, distinctions between the terms larceny, theft and shoplifting, whether crimes or lesser offenses, are not significant in our opinion. The Code of Criminal Justice applies the term theft to various unlawful takings of property. N.J.S.A. 2C:20-2; State v. Talley, 94 N.J. 385, 390-393 (1983). For the law of defamation it should make little difference if a person's reputation is ruined by an unwarranted charge of theft of goods worth more or less than $200 or *597 of taking merchandise from a store without paying for it. Clearly the accusation of theft involves a criminal offense of moral turpitude.
Thus, we hold that the false, unprivileged imputation of theft or larceny is slanderous per se, whether the offense is indictable or not. This is consistent with the current Restatement position and the rule in some states that the imputation of an offense of moral turpitude which subjects a person to punishment and "brings disgrace upon the party falsely accused" is actionable per se. Kelly v. Flaherty, 16 R.I. 234, 14 A. 876 (Sup.Ct. 1888), quoting from Miller v. Parish, 25 Mass. 384 (Sup.Jud.Ct. 1829); see Powers v. Carvalho, 117 R.I. 519, 368 A.2d 1242 (Sup.Ct. 1977); cf. Edwards v. Ideal Food Stores, 499 S.W.2d 343 (Ct.Civ.App.Tex. 1973); Wilkerson v. Carlo, 101 Mich. App. 629, 300 N.W.2d 658 (Ct.App. 1980); Zayre of Virginia, Inc. v. Gowdy, 207 Va. 47, 147 S.E.2d 710 (Sup.Ct. of App. 1966); Prosser, supra, § 112 at 755.
The other points raised on appeal concern the dismissal of plaintiff's claim for damages based on invasion of privacy, assault, and false imprisonment. The trial judge found that plaintiff had consented to the search of her pocketbook which negated the invasion of privacy claim. On the evidence presented, the trial judge properly dismissed this claim. R. 4:37-2(b); Dolson v. Anastasia, 55 N.J. 2, 5 (1969). We reach the same conclusion with respect to the claims for assault and for false imprisonment. There was no proof of an assault, nor of an unlawful detention by force or threats. See Earl v. Winne, 14 N.J. 119, 128 (1953); Cannon v. Krakowitch, 54 N.J. Super. 93, 98 (App.Div. 1959).
We affirm the judgment in part and reverse in part. The case is remanded to the trial court for a new trial on the defamation count only.