## CIRCUIT COURT OF ALBEMARLE COUNTY

Alison Francis Duprey

v.

J. C. Penney Co., Inc., et al.

February 27, 1995

Case No. 6052-L

BY JUDGE PAUL M. PEATROSS, JR.

This matter comes before the Court on the Demurrer filed by the Defendants, J. C. Penney Co., Inc., and Angela Peraldo, to the Motion for Judgment of the Plaintiff, Alison Francis Duprey. Assuming the facts as alleged by the Plaintiff to be true, the facts giving rise to this action are as follows.

On August 9, 1994, the Plaintiff and her friend, Andrea Lynn Huestis, both thirteen years old, were shopping for clothing in Penney's department store in Fashion Square Mall. While shopping, the Plaintiff and Huestis had occasion to use one of a set of three dressing rooms in the store.

When the Plaintiff and Huestis attempted to leave the dressing rooms' vicinity, Defendant Doe called to the Plaintiff and Huestis and demanded, in essentially these words, "Come here, young ladies; you have a mess to clean up." Plaintiff alleges that Defendant Doe was an employee of Defendant Penney's and that Defendant Peraldo acted in complicity with Doe throughout the events in question.

The Plaintiff and Huestis insisted that they had done nothing, but Doe stated that the girls "[knew] what [they] did" and repeated her demand that the girls clean up their "mess." "Intimidated and overborne," the Plaintiff and Huestis followed Doe into one of the dressing rooms. Motion for Judgment, para. 9.

Once inside the dressing room, Doe indicated that the "mess" the girls were supposed to clean was some urine in the bottom of a trash can, for which Doe implied that one or both of the girls were responsible. On

Doe's insistence, the Plaintiff and Huestis remained in the dressing room until they had cleaned up the urine, using paper towels with their bare hands. After the girls had finished cleaning, Doe permitted them to return to the custody of Plaintiff's mother, who was in another part of Fashion Square Mall but whose presence neither Doe nor Peraldo had sought to ascertain.

Based on these facts, the Plaintiff sets forth six counts in her Motion for Judgment. The Court addresses each count in turn.

## I. *False Imprisonment*

The Plaintiff alleges that Doe's words and conduct resulted in a reasonable apprehension of force and thereby caused the Plaintiff to be confined unwillingly to the dressing room area, a result which Doe and Peraldo intended. In *Zayre, Inc. v. Gowdy*, 207 Va. 47 (1966), the Supreme Court described false imprisonment as follows:

> False imprisonment is restraint of one's liberty without any sufficient cause therefor [sic]. It is not essential that a citizen be confined in jail or placed in the custody of an officer. If a person is under a reasonable apprehension that force will be used unless he willingly submits, and he does submit to the extent that he is denied freedom of action, this, in legal contemplation, constitutes false imprisonment.

207 Va. 47, 50-51 (1966); *see also S. H. Kress & Co. v. Musgrove*, 153 Va. 348, 356 (1929) (to constitute false imprisonment it is sufficient that a person reasonably fears that force will be employed if he or she does not submit and that the person consequently does submit and is thereby denied freedom of action).

The facts in *Zayre* involved two teenage girls (ages 13 and 14), one of whom had purchased a bathing suit in the defendant's store. *Id.* at 48-49. The purchaser changed into the suit before leaving the store, and when the girls had left the store, the store's security officer stopped the girls on the sidewalk. *Id.* After the girls were unable to produce the sales receipt, the officer requested that they go back into the store; he permitted them to leave only after the sales clerk had identified the girls as having paid for the suit. *Id.*

The Court held that the evidence was sufficient to constitute a jury question as to whether the girls had been falsely imprisoned. *Id.* at 51. The girls returned to the store because "the security guard was a person of

authority and the young ladies were afraid not to follow his directions. They were deprived of their right of freedom of movement and the right to come and go as they chose." *Id.*

The facts of *Zayre* are similar to the facts in this action in that both cases involve two teenage girls who allegedly were falsely imprisoned by officials of a department store. The facts are dissimilar with respect to the alleged offenses for which the stores restrained the girls' movements. The facts are sufficiently similar, however, for this Court to overrule the Demurrer at this stage of the case.

## II. *Assault*

The Plaintiff alleges that the actions of Doe and Peraldo in insisting that the Plaintiff clean up the urine resulted in Plaintiff's reasonable apprehension of an offensive contact with her person and thereby constitute an assault. The Defendants, however, define assault differently, asserting that a claim for assault must necessarily allege facts showing "any attempt or offer with force or violence to do a corporal hurt to another." *Jones v. Commonwealth*, 184 Va. 679, 681 (1946).

The key aspects of the *Jones* court's definition are (1) the meaning of "force" and (2) the meaning of "corporal hurt." With respect to the second aspect, it appears to this Court that being required to place one's hands in urine would constitute a corporal hurt. The *Jones* court, *supra*, indicated its understanding of "corporal hurt" in defining battery as "the *actual infliction of corporal hurt* on another (e.g. the *least touching* of another's person) . . . whether by the party's own hand, or by some means set in motion by him." *Id.* at 682 (emphasis in original). Thus, if a corporal hurt results from the *least* touching of another's person, the Plaintiff did receive a corporal hurt when required by the Defendant to touch the urine.

The question thus becomes whether the Defendant's verbally ordering the Plaintiff to clean the "mess" constitutes an offer of force. Plaintiff does not allege that the Defendant actually laid hands on her, but does allege that the Plaintiff submitted "to an *apprehension of force* that plaintiff then reasonably understood *from the words and conduct of Doe.*" Motion for Judgment, para. 10 (emphasis supplied). Although Plaintiff does not specify what "words and conduct" gave rise to her apprehension of force, the Court finds that this pleading is sufficient to meet the definitional requirement of "assault" at this stage of the litigation.

The Second Restatement of Torts, which is cited by the Plaintiff, defines assault as "intending to cause a harmful or offensive contact with the

person of [another] . . . or an imminent apprehension of such a contact." *See* Restatement (Second) of Torts § 21 (1965). The Restatement pronounces that a bodily contact is "offensive" if it "offends a reasonable sense of personal dignity." *See id.* § 19.

The Court finds that placing one's hands in contact with urine might offend a reasonable sense of personal dignity and that a child would be apprehensive if required to do so. Thus, according to the authority provided by both the Defendants and the Plaintiff, the Defendants' demurrer is overruled regarding the assault claim.

### III. *Battery*

The definition of battery provided by the *Jones* court, *supra*, indicates that the Plaintiff did suffer a battery when actually required to place her hands in contact with the urine. In addition, according to the Restatement of Torts, actually causing, directly or indirectly, an offensive touching to occur constitutes a battery. Moreover, the Restatement provides as an example of a battery a scenario similar to the facts now before the court:

> Comment: . . . . (c) . . . It is not necessary that the contact with the other's person be directly caused by some act of the actor. All that is necessary is that the actor intend to cause the other, directly or indirectly, to come in contact with a foreign substance in a manner which the other will reasonably regard as offensive. Thus, if the actor daubs with filth a towel which he expects another to use in wiping his face with the expectation that the other will smear his face with it and the other does so, the actor is liable as fully as though he had directly thrown the filth in the other's face or had otherwise smeared his face with it.

Restatement (Second) of Torts § 18 (1965).

The majority of assault and battery claims arise from incidents of actual physical injury, but the theory behind recovery for assault and battery does not seem to require actual bodily injury *per se*. One court stated the theory as follows:

> The law is so jealous of the sanctity of the person that the slightest touching of another, or of his clothes, or cane, or anything else attached to his person, if done in a rude, insolent or angry manner, constitutes a battery for which the law affords redress.

*Crosswhite v. Barnes*, 139 Va. 471, 477 (1924). Thus, although cleaning up the urine did not burn the Plaintiff's skin or otherwise cause a physical

injury, it appears to this Court that the threat of and the consummated act of being forced to clean up the urine constitutes an "offensive touching" as contemplated by the Restatement.

Therefore, the Court finds that the claim for battery is sufficiently pleaded and the Demurrer is overruled.

## IV. *Intentional Infliction of Emotional Distress*

By the case of *Russo v. White*, 241 Va. 23 (1991), cited by defense counsel, recovery on a theory of intentional infliction of emotional distress is allowed only when the following conditions are met: (1) the wrongdoer's conduct is intentional and reckless; (2) the conduct is outrageous and intolerable; (3) the alleged wrongful conduct and emotional distress are causally connected; and (4) the distress is severe. 241 Va. 23, 26 (1991).

In the present action, the Defendants challenge whether the Plaintiff has alleged any facts to demonstrate the necessary degree of outrageousness on the part of the defendants to support Plaintiff's claim. Demurrer, para. 4. In *Russo*, the court discussed the outrageousness prong in its consideration of whether the trial court was correct in sustaining the defendants' demurrer. *Id.* at 26-27.

The female plaintiff in *Russo* alleged that the male defendant, with whom she had gone on one date and whom she then dated no more, placed hundreds of "hang-up" calls to her home over the period of approximately a year; the plaintiff "kept a log" in which she documented 340 such calls in a two-month period alone, an average of 5.6 times per day. *Id.* at 25, 27. Although the defendant did not speak during the calls, the plaintiff claimed that the calls constituted outrageous conduct because the calls were made to a single parent with a young child and because it was reasonable for the plaintiff to infer from the frequency of the calls that the defendant might escalate the matter to the point of violence. *Id.* at 27.

The court did not decide whether such conduct was outrageous, however; the court assumed, *arguendo*, that the calls did constitute outrageous conduct and decided the case based on the court's finding that the plaintiff's distress was not sufficiently severe. *Id.* at 28. The court did, however, provide the appropriate standard:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Id.* at 27 (citing Restatement (Second) of Torts 46 (1965)).

In *Womack v. Eldridge*, the court reversed the trial court's setting aside of the jury verdict in a case for intentional infliction of emotional distress. 215 Va. 338 (1974). The *Womack* court cited the Restatement of Torts regarding close determinations of "outrageous":

> Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

*Id.* at 342 (citing Restatement (Second) of Torts § 46 (1965)).

At first blush, it does not seem apparent that the Defendant's request that the Plaintiff clean up the urine was outrageous. The Plaintiff admittedly occupied the dressing room immediately before the Defendant approached the Plaintiff and feasibly could have been responsible for the "mess." However, Defendant did not offer to the child and has not offered to the Court, as an affirmative defense, any proof to suggest that the child was in fact the person responsible; such proof, if presented, would seem to make the Defendant's actions more reasonable. Moreover, the Plaintiff is a child. Whether it is atrocious and intolerable in a civilized society to accuse a teenager of such socially unacceptable behavior as urinating in a wastebasket is arguably a jury question.

Thus, the Demurrer to the Count for intentional infliction of emotional distress is overruled.

## V. *Insulting Words*

In *Zayre*, discussed *supra* regarding Count I, the store official implied the plaintiff had committed the offense of larceny. The *Zayre* court held that "words uttered by a person falsely conveying the charge of a criminal offense involving moral turpitude are insulting and actionable under the [insulting words] statute." 207 Va. at 50. In the instant case, however, the store official accused the Plaintiff of urinating in a wastebasket. Thus, because the words used did not accuse the Plaintiff of a criminal offense, the words are not "insulting" *per se* according to *Zayre*.

Plaintiff's counsel contends that there is no requirement that the alleged insulting words tend towards violence or a breach of the peace because "an action for insulting words is completely assimilated to the common law action for libel or slander, and from the standpoint of the Virginia law

is an action for libel or slander." *Guide Publishing Co. v. Futrell*, 175 Va. 77, 85 (1940).

Defendants' counsel also cites *Guide* because, notwithstanding the language quoted above, the court deemed important that "the usual construction and common acceptation of the words do not convey an insult, nor does such a construction of them 'tend to violence and breach of the peace'." *Id.* at 88. The key issue, however, is whether the court or the jury determines what constitutes "insulting."

Prior to 1940, the insulting words statute allowed the jury sole discretion in determining whether or not the words of which the plaintiff complained were insulting. In 1940, an amendment to the statute removed the prohibition that "[n]o demurrer shall preclude a jury from passing thereon." *See Darnell v. Davis*, 190 Va. 701, 705-06 (1950). Subsequently, courts may determine whether or not fair-minded persons could construe words as insulting. *Id.*

Applying common-law rules of slander, courts have determined that words are actionable *per se* if they meet the following criteria:

> (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society. (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. (4) Those which prejudice such person in his or her profession or trade. All other defamatory words which, though not in themselves actionable, occasion a person special damages are actionable.

*Shupe v. Rose's Stores*, 213 Va. 374, 376 (1972) (citations omitted), *cert. denied*, 473 U.S. 905 (1985).

In *Shupe*, the plaintiff alleged that the defendant department store posted a notice on its cash register that no checks or credit cards were to be accepted from the plaintiff. *Id.* at 375. The court found that the plaintiff failed to state a cause of action because the plaintiff neither met any of the four outlined criteria nor alleged special damages. *Id.* at 376.

On the issue of "special damages," the court stated in *Fleming v. Moore*, 221 Va. 884 (1981), that special damages are "not to be limited to pecu-

niary loss." 221 Va. 884, 894 (1981), *cert. denied*, 472 U.S. 1032 (1985). Moreover, the Court held that "[t]o the extent that the language in *Shupe* may be construed to indicate that emotional upset and embarrassment cannot constitute 'special damages,' it is hereby modified." *Id.*

According to *Fleming*, the Plaintiff in the present case has alleged special damages in asserting that because her "health and education are especially subject to compromise due to a shunt in her brain and learning disabilities, [she] suffered mortification, humiliation and embarrassment . . . ." Motion for Judgment, para. 38. Thus, the Demurrer to the Count for insulting words is overruled.

### VI. *Slander*

Defendants' demurrer with respect to Count VI of the Motion for Judgment, for slander, states that there is no cause of action for alleged defamatory statements made by Defendants to Plaintiff. Clearly, the Defendant's demurrer should be sustained on this count, as the Plaintiff's proper cause of action for alleged defamatory statements made to the Plaintiff is subsumed by Count V for insulting words.

The Demurrer does not challenge Count VI's allegation of slander with respect to statements made by the Defendants to the Plaintiff's companion at the time of the incident.

### VII. *Conclusion*

For the reasons stated, the Demurrer is overruled on Counts I through V inclusive and is sustained on Count VI, insofar as it addresses statements made by Defendants to the Plaintiff herself.