Levita MILLS, Plaintiff,

v.

KINGSPORT TIMES–NEWS, Defendant.

Civ. A. No. 78–0012–B.

United States District Court,
W. D. Virginia,
Big Stone Gap Division.

Aug. 30, 1979.

Hugh P. Cline, Cline, McAfee & Adkins, Norton, Va., for plaintiff.

Walter O. Waddey, Kingsport, Tenn., Kenneth P. Asbury, Wise, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

### I.

Plaintiff, Levita Mills, originally filed this action in libel against the defendant, Kingsport Publishing Corporation (d/b/a Kingsport Times-News), in the Circuit Court of Wise County, Virginia, on December 30, 1977. The motion for judgment requested an award of Five Hundred Thousand Dollars ($500,000.00) for compensatory damages and Five Hundred Thousand Dollars ($500,000.00) for punitive damages. On January 27, 1978, defendant petitioned for removal to this federal court under the diversity statute. 28 U.S.C. § 1332. Removal was allowed upon a finding that the amount in controversy exceeded Ten Thousand Dollars ($10,000.00), and that plaintiff was, and is, a citizen of Wise County, Virginia, while defendant was, and is, incorporated under the laws of Ohio and its principal place of business was, and is, in Kingsport, Tennessee. Presently, defendant has filed a motion for summary judgment in its favor on all the issues in this case. The pertinent facts affecting this motion are as follows:

During the fall of 1977, the plaintiff was charged with the murder of her husband. On November 6, 1977, the defendant published a newspaper account of plaintiff's preliminary hearing which occurred in the Wise County General District Court. That article was entitled "Exam Slated in Murder Charge" and opened with the following account:

A 32-year old local woman has been committed to Southwest State Hospital in Marion for psychiatric evaluation prior to trial for the murder of her husband Sept. 4.

Levita Mills of the Meadmore community was remanded to a mental examination Friday in Wise County General District Court at the urging of the prosecution.

This account of plaintiff's commitment was, in fact, false.

Defendant's reporter, Jon Bailey Greer, filed an affidavit in which he claimed that the article was based upon information received from special prosecutor S. Strother Smith immediately after the hearing. However, Mr. Greer further related that Mr. Smith possibly misunderstood the reporter's question. On May 9, 1979, plaintiff filed an affidavit by Mr. Smith in which he denied conveying such information to Mr. Greer.

Subsequently, defendant filed a motion for summary judgment in its favor on all the issues in this case. Grounded in Rule 56, of the Federal Rules of Civil Procedure, and supported by a brief, defendant contended that the disputed article does not constitute libel per se; there was no allegation of special damages to support a libel per quod action; even if the words are untrue, unprivileged, and published with actual malice, these words cannot be legally construed as libel; and there was no allegation of "actual malice" as is constitutionally required.

## II.

As a prelude to a discussion of the issues, it should be noted that plaintiff's motion for judgment was unclear as to whether this cause is proceeding under the insulting words statute, Va.Code Ann. § 8.01–45 (Repl.Vol.1977), or common law libel. However, for purposes of the present case, "[t]he trial of an action for insulting words is completely assimilated to the common law action for libel or slander, and from the standpoint of the Virginia law it is an action for libel or slander." *Carwile v. Richmond Newspapers,* 196 Va. 1, 82 S.E.2d 588, 591 (1954). Furthermore, in an action for libel the common law rules of slander are to be applied. *Shupe v. Rose's Stores, Inc.,* 213 Va. 374, 192 S.E.2d 766, 767 (1972). Hence, no distinction is required to be made between the statutory and common law actions.

## III.

As far as can be determined, there has never been a Virginia Supreme Court decision nor a Virginia statute which has considered whether a statement that a person is insane or has an unstable mind is libelous per se. Chief Judge Learned Hand faced this problem in *Mattox v. News Syndicate Co.,* 176 F.2d 897, *cert. den.,* 338 U.S. 858, 70 S.Ct. 100, 94 L.Ed. 525 (1949). In that case a New York newspaper published an article about a Norfolk, Virginia, homicide trial. A portion of that article described one of the accused's witnesses as formerly being "a patient in a mental institution." After observing there were no Virginia decisions on whether it is libelous per se to say that a person is insane or of unstable mind, Judge Hand concluded that the general law holds such a statement as libelous per se and, in absence of evidence to the contrary, federal courts are to assume the same is true in Virginia. *Id.* at 901. A quick perusal of recent reference works will show that imputations of insanity are still generally recognized as libelous per se and "actionable without special damages when published of a private person." Annot., 23 A.L.R.3d 652, 657 (1969). *See also* 50 Am.Jur. *Libel and Slander* § 91 (1970); Restatement (Second) of Torts § 559, Comment c (1977).

However, subsequent to the *Mattox* decision, the Virginia Supreme Court listed only four areas of defamatory words, libelous or slanderous, 192 S.E.2d at 767, which are to be considered actionable per se. That court stated:

> At common law defamatory words which are actionable *per se* are: (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society. (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such

an office or employment. (4) Those which prejudice such person in his or her profession or trade. *All other defamatory words* which, though not in themselves actionable, occasion a person special damages are actionable. *Carwile v. Richmond Newspapers, Inc.,* 196 Va. 1, 82 S.E. 588, 591 (1954), *restated in, Shupe v. Rose's Stores, Inc.,* 213 Va. 374, 192 S.E.2d 766, 767 (1972) [emphasis added].

Since plaintiff's allegations do not fall within the province of any of these four categories, this case does not establish libel per se. However, a libel per quod action does lie in that plaintiff's allegations of humiliation, embarrassment, and permanent stigma, occasioned by inquiries about her commitment, will give rise to special damages if proven in congruence with the rest of this opinion.

### IV.

Defendant contends that the contested publication is not actionable libel when viewed in light of all the surrounding facts and circumstances. Impliedly, it is argued that such a mental examination is a commonly accepted practice in homicide cases, and being such, the publication of same is not an imputation of insanity. Therefore, the defendant asserts these words are not actionable as a matter of law.

Defendant cites as authority *Zayre of Va., Inc. v. Gowdy,* 207 Va. 47, 147 S.E.2d 710 (1966). But, as the *Zayre* court alludes, the question of circumstances as determining meaning and effect is a factual one and, therefore, within the province of the jury. *See also* 12A M.J., Libel and Slander, § 11 (1978) (citing as authority *Alderson v. Kahle,* 73 W.Va. 690, 80 S.E. 1109 (1914)). Also, the Virginia Supreme Court has directly held that construction of defamatory words is a question for the jury. *Powell v. Young,* 151 Va. 985, 144 S.E. 624 (1928). So, it is at trial, and not during pretrial motions, that defendant may argue this particular account did not impute insanity to the plaintiff.

■ Of course, the "allegedly defamatory words are to be taken in their plain

and natural meaning and to be understood by courts and juries as other people would understand them." *Carwile v. Richmond Newspapers, Inc.,* 196 Va. 1, 82 S.E.2d 588, 592 (1954). Also, "[a] defamatory charge may be made by inference, implication or insinuation . . . . However, the meaning of the alleged defamatory language cannot, by innuendo, be extended beyond its ordinary and common acceptation." *Id.* As a further refinement, other jurisdictions have held statements not to be libelous if the inaccuracies did not alter the complexion of the situation and did not have a different effect on the reader other than that which the literal truth would produce. *Grab v. Poughkeepsie Newspaper, Inc.,* 91 Misc.2d 1003, 399 N.Y.S.2d 97 (1977) (newspaper stated plaintiff was sent to state penitentiary when actually he was sent to reform school); *Joyce v. George W. Prescott Publishing Co.,* 348 Mass. 790, 205 N.E.2d 207 (1965), *reh. den.,* 355 Mass. 795, 246 N.E.2d 171 (1969) (with regard to placement in mental institution, newspaper not liable for misuse of technical definition of "commitment"); *McCracken v. Evening News Association,* 3 Mich.App. 32, 141 N.W.2d 694 (1966) (newspaper not liable for reporting plaintiff charged with $100,000 fraud when it was actually $50,000).

■ On the other hand, if the reported inaccuracy is of a different subject or incident, then an action for libel lies. For instance, a Virginia court has stated: "To say that a man committed a felony which he did not commit, is a libel, and this is true even though he had, in fact, committed another felony of the same general character." *James v. Powell,* 154 Va. 96, 152 S.E. 539, 543 (1930), *citing, Norfolk Post Corp. v. Wright,* 140 Va. 635, 125 S.E. 656 (1924). Of course, in special damage suits it could be argued that the inaccuracy does no more damage than the literal truth and, therefore, would not be actionable. But that is a determination for the jury and not a matter of law. *See Wright,* 125 S.E. at 657.

In summation, it is for the jury to decide if the erroneous report cast an imputation

of insanity on the plaintiff and, if it did so, did that have an effect on the average reader which the literal truth would not have produced. If such an effect of the imputation is established and special damages are shown, plaintiff may recover.

## V.

In *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court ruled that the First and Fourteenth Amendments prohibited a public official from recovering damages for a defamatory falsehood relating to his official conduct, absent proof that the statement was made with "actual malice." This standard of fault was defined as "knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 280, 84 S.Ct. at 727. Subsequently, this "actual malice" test was made applicable to "public figures," *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); *Associated Press v. Walker*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), and then later to public or private figures so long as the defamatory statements concerned matters of public interest. *Rosenbloom v. Metromedia*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).

But in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Supreme Court overruled *Rosenbloom* and held that the actual malice standard was not constitutionally mandated in defamation actions brought by private individuals. However, as *Time v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976), notes, *Gertz* does constitutionally require that some level of fault be established in private individual actions. Hence, state law controls the establishment of privilege in private individual actions, provided that some level of fault on the part of defendant is proven.

The question now arises whether the present plaintiff is to be considered a "public figure" or a "private individual." A recent Supreme Court case, *Wolston v. Readers Digest Association*, ―― U.S. ――, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979), conclu-

sively establishes that the present plaintiff is a "private individual" for this defamation suit.

In *Wolston*, plaintiff was identified in the book, "KGB, The Secret Work of Soviet Agents," as a Soviet agent in the United States who was "convicted of espionage of falsifying information or perjury and/or contempt charges following espionage indictments or who fled to the Soviet bloc to avoid prosecution." ―― U.S. at ――, 99 S.Ct. at 2703. Plaintiff had been convicted of contempt for failure to respond to a grand jury subpoena, but this incident did not follow an espionage indictment. Hence, the publication was false. It should be noted that plaintiff was the subject of fifteen newspaper articles during the time he failed to respond to the grand jury in 1958.

The *Wolston* Court applied the two part "public figure" test of *Time*. First, a person could become a public figure by occupying a position of persuasive power and influence. *See Wolston*, ―― U.S. at ――, 99 S.Ct. 2701. Analogous to *Wolston*, the present plaintiff led a private existence prior to the homicide charge and has not assumed a role of special prominence as a result of the charge. Second, a person may become a public figure by "thrust[ing] themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Id.* Again, as in *Wolston*, plaintiff did not inject herself into the homicide trial to attract attention or influence a public controversy, but rather, "[i]t would be more accurate to say that petitioner was dragged unwillingly into the controversy." *Id.*

The bottom line is "that any person who engages in criminal conduct (does not become) . . . a public figure for purposes of comment on a limited range of issues relating to his conviction." ―― U.S. at ――, 99 S.Ct. at 2708. So, mere newsworthiness is not enough to bestow the public figure status on a criminal defendant, rather, the person must invite the situation as a means to create an atmosphere for public discussion.

## VI.

Having concluded that the present plaintiff is a "private individual" for purposes of determining defendant's privilege, the question remains as to what level of fault is to be applied under Virginia law.

■ The Virginia Supreme Court, in *Newspaper Publishing Corp. v. Burke*, 216 Va. 800, 224 S.E.2d 132 (1976), interpreted the effect of *Gertz* on private party defamation suits as follows:

*Gertz* held, *inter alia*, that the First Amendment protection afforded to a publisher or broadcaster against defamation suits brought by a private person who is neither a public official nor a public figure is not to be extended to defamatory statements concerning an issue of public or general concern . . . that so long as the states do not impose liability without fault, they may define for themselves the appropriate standard of liability for a publisher or broadcaster of a defamatory falsehood which injures a private individual and makes substantial danger to his reputation apparent . . . and that the states may not permit recovery of presumed or punitive damages if liability is not based on knowledge of falsity or reckless disregard for the truth, and a private individual who establishes under a less demanding standard than the *New York Times* test may recover compensation only for actual injury. 224 S.E.2d at 135. [citations omitted].

Hence, for punitive damages the actual malice standard is constitutionally mandated, however, the states may determine their own level of fault for recovery of actual damages.

■ The *Burke* decision expressly left open the standard of liability for actual damages in private individual libel cases in Virginia. 224 S.E.2d at 132. This ruling is to be distinguished from an earlier Virginia case, *News Leader Co. v. Kocen*, 173 Va. 95, 3 S.E.2d 385 (1939). In that case, plaintiff was entitled to recover actual damages when the defendant newspaper was held negligent as a matter of law in reporting the wrong person arrested on a criminal

charge. *Kocen* is distinguished from the present suit in that "[a]bsolute accuracy in identifying a person charged with a crime is necessary in order that some innocent person may not suffer." *Vaughan v. News Leader Co.*, 105 F.2d 360 (4th Cir. 1939). So, Virginia has established negligence as the standard of liability in mistaken identification cases, but the standard of liability remains open in inaccurate reporting cases in which the person identified is indeed the subject of the controversy.

Being such, it is the duty of the federal court to determine the case as would the Virginia Supreme Court, rather than from its own perspective. *Kline v. Wheels by Kinney, Inc.*, 464 F.2d 184 (4th Cir. 1972). But, in absence of guidance from the state court, the federal court must rely on conclusions of other federal courts, state courts, and commentators. *See Evans v. Sturgill*, 430 F.Supp. 1209 (W.D.Va.1977) (sources used to interpret a state statute).

Defendant argues that the actual malice standard applies in Virginia, and rests that contention upon *Sanders v. Harris*, 213 Va. 369, 192 S.E.2d 754 (1972). *Sanders*, however, was based strictly upon the constitutional mandate of *Rosenbloom* which, as noted earlier, was expressly overruled by *Gertz*. Hence, the constitutional constraint under which *Sanders* was decided is no longer applicable.

A similar situation was presented to a federal court in *Mathis v. Philadelphia Newspapers, Inc.*, 455 F.Supp. 406 (E.D. Penn.1978). In that decision the court noted the Pennsylvania Supreme Court had ruled that the actual malice standard would apply to private individual suits. *See Matus v. Triangle Publications, Inc.*, 445 Pa. 384, 286 A.2d 357 (1971), *cert. den.*, 408 U.S. 930, 92 S.Ct. 2494, 33 L.Ed.2d 343 (1972). But, the federal court further observed that *Matus*, the state case,

was decided during the period after *Rosenbloom* and before *Gertz*, a period in which the Supreme Court of the United States had announced, albeit in a plurality opinion, that the Constitution required a showing of 'actual malice' . . . . .

The *Gertz* decision . . . removed that constitutional constraint upon state law. Thus, the question here is whether *Matus* survived *Gertz*.

*Mathis*, 455 F.Supp. at 411.

In determining the survival of *Matus*, the Pennsylvania federal court reasoned that since *Rosenbloom* was the sole basis of *Matus*, and now that *Rosenbloom* was repudiated, the Pennsylvania Supreme Court would abandon the mandate of *Rosenbloom* and "resolve that question by drawing on the policies that traditionally have shaped the Pennsylvania law of libel and slander." 455 F.Supp. at 412. Although, as the court noted, *Sullivan* precludes returning to the common law rule of strict liability, there was no discoverable aspect of Pennsylvania law which would favor retention of the actual malice standard. *Id.*

The Pennsylvania situation is closely analogous to the present case. *Sanders*, the Virginia decision requiring actual malice, was based solely on *Rosenbloom*. On the basis of the above discussion, so long as it is found that a standard of fault is applicable, it is ruled that Virginia law prior to *Rosenbloom* controls this case as to actual damages.

Under pre-*Rosenbloom* Virginia case law, a newspaper had an absolute privilege to publish reports of criminal proceedings, whether preliminary or ex parte. If the information is contained in public records and derived from therein, there is an absolute privilege to publish. If, however, material is received from other than the public record, then the defendant newspaper assumes the risk that the information is incorrect. *Times-Dispatch Publishing Co. v. Zoll*, 148 Va. 850, 139 S.E. 505, 507 (1927). Of course, the records of the preliminary proceeding were open to public inspection. *See* Va.Code Ann. § 16.1–69.40 (Cum.Supp. 1978); §§ 16.1–87 and 16.1–130 (Repl.Vol. 1975).

To be privileged the newspaper article must be an impartial and accurate account of the event as recorded in the public records. Verbatim accounts are not required, but the article must not constitute a substantial departure from the public record. *Alexandria Gazette Corp. v. West*, 198 Va. 154, 93 S.E.2d 274, 281–82 (1956); *Zoll*, 139 S.E. at 507. So, if the departure is substantial, the privilege is lost, and malice is inferred from the publication of defamatory material.[1] *See generally* 12A M.J., Libel and Slander, § 13 (Repl.Vol.1978).

However, this statement of the newspaper privilege must be conditioned by a level of fault as constitutionally required in *Gertz*. It is the opinion of this court that the Virginia policy of accurately reporting public records is better served by a standard of negligence rather than actual malice. The *Sanders* decision is of no validity in Virginia and private individual defamation suits may recover upon proving negligence. This conclusion is further bolstered by the fact that *Burke* expressly left open the standard of fault question in Virginia rath-

---

1. At this point an important distinction must be made. The theory behind the present case is that once there is a published substantial departure from a public record, the publisher has lost his *absolute privilege*. This situation vastly differs from the *qualified privilege* rule of law which requires plaintiff to prove malice in fact. In other words, once a privilege is established, an absolute privilege concerning publication of public records is lost when plaintiff proves a substantial departure from the contents of the public records, whereas a qualified privilege is lost when the plaintiff proves the false statement was made with malice in fact. For example, in *Preston v. Land*, —— Va. ——, 255 S.E.2d 509 (1979), defendant had a qualified privilege before the board of directors to discuss plaintiff's actions in a private club to which both litigants belonged. To recover, plaintiff had the burden of proving malice in fact. The basis of this distinction is that in certain relationships, where qualified privilege attaches, the privileged party should be free to express his ideas, interpret facts, and draw conclusions according to those ideas and facts. On the other hand, if the fact to be published can only be true or false, and that fact is a matter of public record, then any substantial departure from the public record is not privileged. This distinction does not impede free speech whatsoever, it only forces the newspaper to accurately report a fact that is not open to interpretation and is a matter of public record. It should be clear from this footnote material that the present case only concerns publication of material found in public records, and in no way relates to other possible situations.

er than affirming *Sanders* and that the apparent majority of jurisdictions facing the issue have accepted the negligence standard in private individual suits. *See Mathis*, 455 F.Supp. at 412 n. 2.

It follows that defendant's motion for summary judgment, based on the lack of actual malice, is denied.

## VII.

Defendant's motion for summary judgment is denied. First, there is a genuine issue of fact for trial concerning whether the publication constitutes defamation. It is within the province of the jury to determine construction of the words and special damages. Second, under the negligence standard as determined by this court, the jury is to decide whether defendant abused its newspaper privilege.

It is so ORDERED.