## SHENANDOAH PUBLISHING HOUSE, INC.

v.

## E. EUGENE GUNTER

Record No. 921038

February 26, 1993

Present: All the Justices

*David J. Andre (Andre & Fowler*, on briefs), for appellant.

*E. Eugene Gunter* for appellee.

JUSTICE KEENAN delivered the opinion of the Court.

In this defamation case, a private individual seeks both presumed and punitive damages against a media defendant arising from the reporting of matters of public concern. The dispositive issue is whether there is sufficient evidence to support the jury's verdict against the defendant.

E. Eugene Gunter filed a motion for judgment against Shenandoah Publishing House, Inc. (Shenandoah), alleging that Shenandoah printed two newspaper articles defaming him. The articles, written by Maggie Wolff Peterson, appeared in the *Northern Virginia Daily*. The subject of the first article was a police search of Gunter's law office. Acting pursuant to a search warrant, investigators Jay F. Merchant, L.W. Millholland, and David Sobonya searched Gunter's office for a file that they believed contained evidence relating to a burglary.

The affidavit in support of the search warrant was made by Investigator Merchant, who stated that a woman named Ruth Maxwell had told him she had hired Robert Lee Edmonson to commit a residential burglary and steal certain photographs from that house. The affidavit also recounted Maxwell's statement that she had taken the photographs to Gunter's office and that Gunter had made a memorandum concerning their meeting. During their search of Gunter's office, the police found an empty file folder bearing Maxwell's name.

The newspaper article reporting this search bore a headline stating: ''Lawyer's office searched for stolen items.'' The article reported that the police had searched Gunter's office for ''items stolen in a December 1984 break-in of a Loudoun County home.'' The article also stated that the police did not find the contents of Ruth Maxwell's file, and that Gunter said he ''does not know what happened to the file.'' The article also quoted Gunter as stating that Millholland had left the office ''very upset because he didn't find what he was looking for.''

The subject of the second article involved the preliminary hearing conducted in the burglary prosecution of Robert Edmonson. The hearing was held before Judge Archibald M. Aiken, Jr. in the Loudoun County General District Court. In connection with this hearing, Gunter received a subpoena for his personal appearance, as well

as a subpoena duces tecum to produce the Maxwell file. Gunter attended the hearing and brought the Maxwell file with him. Before Gunter was called to testify, Judge Aiken determined that there was sufficient evidence to certify the case to the grand jury. As a result, Gunter did not testify at the hearing, nor was he required to produce the file.

The newspaper article reporting the hearing bore a headline stating, "Lawyer escapes having to produce confidential file." The article stated that subpoenas had been issued requiring Gunter to appear at the Edmonson hearing and to bring the Maxwell file. The article also reported that Judge Aiken had "spared" Gunter from producing the file. Finally, the article stated that Judge Aiken had "denied a motion by Gunter to quash the subpoena requiring that he produce the file."

In presenting his evidence to the jury at the defamation trial, Gunter testified that it was untrue that the police had searched his office for stolen items. He also denied making a statement to Peterson that he did not know what happened to the file. Gunter further testified that he never told Peterson that Investigator Millholland was upset. Instead, he testified that he had told Peterson that Investigator Merchant was upset. Gunter also testified that the second article was inaccurate because it reported that Judge Aiken had denied his motion to quash the subpoena, when, according to Gunter, Judge Aiken never ruled on the motion.

On cross-examination, Gunter admitted that Maxwell and Edmonson came to his office with the stolen photographs. He also admitted that he did not know where the file was on the date of the search.

In its defense, Shenandoah presented the testimony of James Forsyth, an assistant prosecutor who participated in the Edmonson prosecution. Forsyth testified that Judge Aiken had denied the motion to quash the subpoena for the Maxwell file, but that he had also granted counsel leave to raise the motion again if the prosecution sought to admit the file into evidence. Peterson testified that she attended the hearing and understood that the motion to quash had been denied. However, she could not remember whether she had heard Judge Aiken rule on the motion or whether Forsyth had provided her with the information on its outcome.

Gunter's case was submitted to the jury on his claim that the articles were defamatory *per se*, thereby entitling him to recover presumed damages. *See Slaughter v. Valleydale Packers, Inc.*, 198 Va.

339, 347-48, 94 S.E.2d 260, 266 (1956). He also sought an award of punitive damages. The jury returned a verdict in his favor, awarding him $10,000 in presumed damages and $10,000 in punitive damages.

■ The trial court instructed the jury that both the standards of negligence and actual malice were applicable to the recovery of presumed damages. This was error. In Virginia, a negligence standard is applicable when a private individual brings an action based upon a defamatory publication and seeks to recover actual, compensatory damages, not presumed damages. *Gazette, Inc. v. Harris*, 229 Va. 1, 15, 325 S.E.2d 713, 724-25, *cert. denied*, 472 U.S. 1032 and 473 U.S. 905 (1985); *Newspaper Publishing Corp. v. Burke*, 216 Va. 800, 803, 224 S.E.2d 132, 135 (1976).

■ In defamation actions based on statements regarding matters of public concern, actual malice must be proved before presumed or punitive damages can be awarded. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16-17 (1990); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974); *Newspaper Publishing Corp.*, 216 Va. at 803, 224 S.E.2d at 135. The articles before us reported matters of public concern. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492 (1975). Thus, in determining whether the evidence was sufficient to state a viable claim for defamation, we consider whether Gunter's evidence was sufficient to establish that Shenandoah acted with actual malice. Further, since the lesser standard of negligence is subsumed in the actual malice standard, *Richmond Newspapers, Inc. v. Lipscomb*, 234 Va. 277, 288, 362 S.E.2d 32, 37 (1987), *cert. denied*, 486 U.S. 1023 (1988), the trial court's erroneous instruction on the negligence standard does not affect our inquiry here.

■ A finding of actual malice requires that the statement be made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Gazette, Inc. v. Harris*, 229 Va. at 8, 325 S.E.2d at 721. "A 'reckless disregard' for the truth . . . requires more than a departure from reasonably prudent conduct." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989). Instead, the evidence must establish that the defendant had a high degree of awareness of probable falsity. *Id.* Unless the defendant had such an awareness, its failure to investigate before publishing is not sufficient to establish a reckless disregard for the truth. *Id.*

Further, without proof of falsity, there can be no recovery for defamation. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986).

■ The plaintiff's evidence must establish actual malice by clear and convincing evidence. *Bose Corp. v. Consumers Union, Inc.*, 466 U.S. 485, 511 n. 30 (1984); *Gazette, Inc.*, 229 Va. at 19, 325 S.E.2d at 727. Upon review, the appellate court "must exercise independent judgment and determine whether the record establishes actual malice with convincing clarity." *Bose Corp.*, 466 U.S. at 514; *Gazette, Inc.*, 229 Va. at 19, 325 S.E.2d at 727.

In accordance with these principles, we examine the five statements that Gunter contends support the jury's verdict. The first was the report that Gunter's office was "searched for stolen items." While Gunter testified that this statement was false, his testimony was based solely on his own opinion, without any factual support.

■ The balance of the record plainly refutes Gunter's testimony. The affidavit supporting the search warrant stated that Maxwell had brought the stolen photographs to Gunter's office. Investigator Merchant testified that one of his purposes in obtaining the warrant was to search for those stolen photographs. Also, Gunter admitted on cross-examination that Maxwell and Edmonson had come to his office with the stolen photographs. Thus, since there was no substantive evidence before the court that the statement at issue was false, Gunter has failed, as a matter of law, to establish actionable defamation. *Philadelphia Newspapers, Inc.*, 475 U.S. at 776.

■ The second statement at issue quoted Gunter as stating that he did not know where the file was. While Gunter testified that he did not make such a statement, he admitted that its substantive content was true. Thus, Gunter's own evidence demonstrates an absence of actual malice on the part of Shenandoah, and the evidence taken as a whole was insufficient to establish actionable defamation. *See Masson v. New Yorker Magazine, Inc.*, ___ U.S. ___, ___, 111 S.Ct. 2419, 2433 (1991).

■ The third statement at issue quoted Gunter as stating that "Officer Millholland left the office very upset." Gunter testified that he made such a statement about Officer Merchant, not about Officer Millholland. However, since there was no evidence that this error resulted from any cause other than a commonplace inaccuracy, it cannot form the basis of a finding of actual malice. *See Bose Corp.*, 466 U.S. at 513. Moreover, the statement itself was not

defamatory *per se* because it did not articulate or impute any injurious information concerning Gunter. *See Fleming v. Moore*, 221 Va. 884, 889, 275 S.E.2d 632, 635 (1981).

■ The fourth statement at issue was that Judge Aiken had denied Gunter's motion to quash. The evidence before the trial court on this point was conflicting. Both Gunter and Paul Morrison, the attorney who represented Edmonson at the hearing, testified that Judge Aiken did not rule from the bench on the motion. In contrast, James Forsyth, the prosecutor who participated in the hearing, testified that Judge Aiken did rule on the motion and denied it, with leave granted counsel to renew the motion if the prosecutor sought to offer the file into evidence. Further, based on her attendance at the hearing, Peterson testified that it was her understanding that the motion had been denied.

Assuming that the jury accepted Gunter's evidence over that presented by Shenandoah, the record nevertheless fails to demonstrate with convincing clarity that Shenandoah published the statement with knowledge of its falsity or a reckless disregard of the truth. Further, there was no evidence before the trial court that the error, if any, was more than a commonplace inaccuracy. Without such evidence, Gunter's claim of actual malice cannot be sustained. *See Bose Corp.*, 466 U.S. at 513.

■ Finally, Gunter argues that Peterson's use of the words "escapes," "controversial," and "spared" were defamatory *per se* because they insinuate improper conduct on his part. Gunter did not establish, however, that any of these words were false in the context in which they were used. Since he failed to prove falsity, there can be no actionable defamation arising from the use of these words. *Philadelphia Newspapers, Inc.*, 475 U.S. at 776; *see Gazette, Inc.*, 229 Va. at 15, 325 S.E.2d at 725.

■ Based on our review of the above statements, we conclude that the evidence was insufficient as a matter of law to support the jury's verdict. Accordingly, we will reverse the judgment of the trial court and enter final judgment for Shenandoah.

*Reversed and final judgment.*