# Richmond.

## Moss v. Harwood.

### February 4, 1904.

### Absent, Cardwell, J.

1. LIBEL AND SLANDER—*Imputing Crime—Insulting Words—Tending to Disgrace.*—To write and publish of the Chief of Police of a city, who is chargeable with the collection from his subordinates of fines imposed by a police justice, that he "has within the last past twelve months collected certain fines of Officer P., which fines do not appear by the records of the police court to have been reported," does not impute to him the crime of larceny or embezzlement, nor are such words actionable under the Virginia statute against insulting words (Code, section 2897), in the absence of an averment in the declaration that from their usual construction and common acceptation they are construed as insults and tend to violence and a breach of the peace, or some equivalent averment; yet, when aided by the innuendo, operating within the scope of its proper functions, they impute to him conduct tending to injure his reputation in the common estimation of good citizens, and are therefore libelous.

2. LIBEL AND SLANDER—*Imputing Crime—Construction of Words.*—In determining, in an action of libel, whether or not the language used imputes a criminal offence, the words must be construed in the plain and popular sense in which the rest of the world would naturally understand them. The charge need not be made in express terms. It is sufficient if they consist of a statement of matters which would naturally and presumably be understood by those who heard them as charging a crime.

3. LIBEL AND SLANDER—*Innuendo—Office of.*—The office of an innuendo is to show how the words used are defamatory, and how they relate to the plaintiff when that is not clear on their face. It cannot in-

troduce new matter, nor extend the meaning of the words used, nor make that certain which is in fact uncertain.

4. LIBEL AND SLANDER—*Words Tending to Injure or Disgrace.*—If the words employed in a libel tend to injure a plaintiff in his good name, fame and credit, and to bring him into public scandal, infamy and disgrace, they are actionable, although not imputing an indictable offence.

Error to a judgment of the Circuit Court of Elizabeth City county in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Charles C. Berkeley* and *John H. Gilkeson,* for the plaintiff in error.

*R. M. Lett* and *O. D. Batchelor,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The first count of the declaration in this case charges that Harwood was chief of police of the city of Newport News, and that on the 23d of November, 1899, in the city of Newport News, A. A. Moss, the mayor of the city, published a certain false, malicious, scandalous, and defamatory libel concerning the plaintiff, as follows: "Your complainant (meaning the said defendant A. A. Moss) charges that the said chief of police (meaning the plaintiff, Harwood) has within the last past twelve months collected certain fines of Officer Padgett, which fines do not appear by the records of the police court to have been reported"—Moss meaning thereby to insinuate and charge, and have it understood, that the plaintiff, Harwood, was guilty of the crime of embezzlement and larceny.

The second count of the declaration charges that the defendant composed and published concerning the plaintiff a certain false, scandalous, malicious, and defamatory libel, setting it out in the same words employed in the first count, and charges that the defendant knew the falsity of the said charge, and that by means of the publication of the same the plaintiff has been greatly injured in his good name, fame, and credit, and brought into public scandal, infamy, and disgrace with and amongst all of his neighbors and other good and worthy citizens of the Commonwealth, etc.

The defendant demurred to the declaration, and, while the demurrer does not state in terms that it is to the declaration and each count thereof, we think the language in which the demurrer is couched may be so considered. The Circuit Court overruled the demurrer, and its action in this respect constitutes the first assignment of error.

The language of the imputed libel is, "Your complainant charges that the chief of police has within the last past twelve months collected certain fines of Officer Padgett, which fines do not appear by the records of the police court to have been reported."

It is averred that the purpose of the defendant by this publication was to charge the plaintiff with being guilty of embezzlement.

It is well settled that: "In determining whether or not the language does impute a criminal offence the words must be construed in the plain and popular sense in which the rest of the world would naturally understand them. It is not necessary that they should make the charge in express terms. It is sufficient if they consist of a statement of matters which would naturally and presumably be understood by those who heard them as charging a crime." *Payne* v. *Tancil,* 98 Va. 264, 35 S. E. 725. That case, it is true, was an action for a slander, but in this respect there seems to be no difference between written and spoken words.

We are of opinion that, construing the language employed in the libel in accordance with this rule, it does not justify the interpretation placed upon it by the plaintiff.

Embezzlement is a statutory crime: "If any person wrongfully and fraudulently use, dispose of, conceal, or embezzle any money, bill, note, check, order, draft, bond, receipt, bill of lading, or any other property which he shall have received for another, or for his employer, principal, or bailor, or by virtue of his office, trust, or employment, or which shall have been entrusted or delivered to him by another, or by any court, corporation, or company, he shall be deemed guilty of larceny thereof." Code, sec. 3716.

"If any officer, agent, or employee of the State, or of any city, town, or county, having custody of public funds, knowingly misuse or misappropriate the same, or knowingly dispose thereof otherwise than in accordance with law, he shall be confined in the penitentiary not less than one nor more than ten years; and any default of any such officer, agent, or employee, in paying over said funds to the proper authorities when required by law to do so, shall be deemed *prima facie* evidence of his guilt." Id. sec. 3717.

A comparison of the language employed in the libel with these quotations from the Code makes it obvious, we think, that the innuendo cannot be sustained; in other words, that the language employed, construed in its plain and popular sense, does not impute the crime of larceny or embezzlement to the plaintiff.

"The office of an innuendo is to define the defamatory meaning which the plaintiff seeks to put upon the words complained of, to show how they come to have the defamatory meaning claimed for them, and also to show how they relate to the plaintiff, whenever that is not clear upon the face of them. But an innuendo must not introduce new matter, or enlarge the natural meaning of words. It must not put upon them a construction which they will not bear. It cannot alter or extend the sense of

the defamatory words, or make that certain which is in fact uncertain." Newell on Slander & Libel (2d Ed), p. 619.

The same author (at page 620) says: "The law proceeds on the hypothesis that what is the ordinary meaning and nature and intrinsic force of language is a question of law. When, therefore, words are set forth as having been spoken by the defendant of the plaintiff, the first question is whether they impute a charge of felony or any other infamous crime punishable by law. If they do, an innuendo undertaking to state the same in other words is useless and superfluous. If they do not, such an innuendo cannot aid it. It therefore often happens that where innuendoes are added which do alter and vary, and even inflame and exaggerate, the sense of the words much beyond their natural force and meaning, yet such innuendoes are held not to vitiate the declaration; the reason of which I take to be this: The words themselves imputing an infamous offence, the innuendo may be rejected as surplusage; and, as the plaintiff is not allowed to go into evidence *aliunde* to show that the words were in fact used in the sense imputed by the innuendo, they can have no influence whatever. But if the words do not impute such infamous crime by their natural sense and meaning, then, as a general rule, the plaintiff is not entitled to recover; and, as he cannot enlarge that meaning by an innuendo so as to let in proof of extraneous facts, his action must fail." To the same effect, see *Payne* v. *Tancil, supra,* and *Moseley* v. *Moss,* 6 Gratt. 534.

If the words employed in the libel had imputed the crime of embezzlement or larceny, the innuendo would have been unnecessary. As the words employed, interpreted in the usual and ordinary acceptation of their meaning, do not impute a crime, their meaning cannot be enlarged by an innuendo so as to accomplish that purpose. We think the demurrer to the first count should have been sustained.

The second count is equally insufficient, if considered as charging any criminal offence upon the defendant. Nor is it

good under section 2897 of the Code of 1887, which provides that all words which, from their usual construction and common acceptation, are construed as insults, and tend to violence and breach of the peace, shall be actionable.

In *Hogan* v. *Wilmoth,* 16 Gratt. 80, it is said that, if a proceeding be under the statute, the declaration must aver that the words, from their usual construction and common acceptation, are construed as insults, and tend to violence and breach of the peace, or else employ some other equivalent averment to denote that the words are actionable under the statute. *Chaffin* v. *Lynch,* 83 Va. 106, 1 S. E. 803; *Payne* v. *Tancil, supra.*

The count, therefore, is not good as charging an indictable offence, nor under the statute as for insulting words.

If the words employed in a libel tend to injure the defendant in his good name, fame, and credit, and to bring him into public scandal, infamy, and disgrace, they are actionable, although not imputing an indictable offence.

In *Adams* v. *Lawson,* 17 Gratt. 250, 94 Am. Dec. 455, it is said: "It is not necessary, to constitute a libel, that the writing should contain the imputation of an offence which may be indicted and punished. It is sufficient if the language tends to injure the reputation of the party, to throw contumely or to reflect shame and disgrace upon him, or to hold him up as an object of scorn, ridicule, or contempt."

And Judge Cooley, in his work on Torts (2d Ed.), p. 240, says: "In libel, as in slander, defamatory publications are classified as publications actionable *per se* and publications actionable on averment and proof of special damage. In the first class are embraced all cases of publications which would be actionable *per se* if made orally. These cases, therefore, require no further attention. It also embraces all other cases where the additional gravity imparted to the charge by the publication can fairly be supposed to make it damaging. Thus, to

say of a man, 'I look upon him as a rascal,' is no slander, unless shown to be damaging; but if it be published of him in one of the public journals, the presumption that injury follows is reasonable and legitimate. So to call a man in print 'an imp of the devil and cowardly snail' is libelous, though an oral imputation of the sort would be presumably harmless. So, to charge a teacher with falsehood in a report made to the official board, and with general untruthfulness, is libelous *per se.* The general rule is stated thus: Any false and malicious writing published of another is libelous *per se* when its tendency is to render him contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or to hinder virtuous men from associating with him." And again the same author says: "In other words, injury is presumed to follow the apparently deliberate act of putting the charge in writing or print, or of suggesting it by means of picture or effigy, where mere vocal utterance to the same effect might be disregarded as possibly harmless."

The law is thus stated in Newell on Slander and Libel, at page 37: "In conclusion it may be said that any publication, expressed either by printing or writing, or by signs, pictures, or effigies, or the like, which tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous, is *prima facie* a libel, and implies malice in its publication."

It appears to have been the duty of the chief of police to collect and report fines. To say of such an officer that he has collected fines, but does not appear to have reported them, while falling short of the imputation of a crime, while not in express terms charging a breach of official duty, yet, when aided by the innuendo, operating within the scope of its legitimate functions, does impute to the plaintiff conduct tending to injure his reputation in the common estimation of good citizens. We are of

opinion that the demurrer to the second count was properly overruled.

For the error of the court in overruling the demurrer to the first count, the judgment must be reversed, and the case remanded for a new trial.

*Reversed.*