COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:  Judges Athey, Chaney and Raphael
Argued at Winchester, Virginia


THEODORE THEOLOGIS

v.      Record No. 0133-22-4

MARK WEILER, PATRICIA JAMES,
  DARIA COLLINS, KHAI WISLER AND
  JANIS BALDWIN

OPINION BY
JUDGE STUART A. RAPHAEL
FEBRUARY 14, 2023


FROM THE CIRCUIT COURT OF FREDERICK COUNTY
Brian M. Madden, Judge

Nicholas Hantzes (Hantzes & Associates, on briefs), for appellant.

William L. Mitchell, II (Richard E. Armstrong IV; Timothy R.
Johnson; James A. Klenkar; Eccleston & Wolf, P.C.; The Law
Offices of Timothy R. Johnson, PLC; Hall, Monahan, Engle, Mahan
& Mitchell, on briefs), for appellees Patricia James, Daria Collins,
Khia Wisler and Janis Baldwin.

No brief or argument for appellee Mark Weiler.


This case arose in 2020 when Theodore Theologis sued several of his fellow townhome-

association members after they publicly criticized his performance as the association's president.

His three-count complaint asserted claims of defamation and business conspiracy.  Because the

trial court correctly found that the statements in question were not defamatory, we affirm its

decision sustaining the defendants' demurrers.

BACKGROUND

In reviewing a trial court's decision sustaining a demurrer, "we accept as true all factual

allegations in the complaint 'made with "sufficient definiteness to enable the court to find the

existence of a legal basis for its judgment."'"  *Patterson v. City of Danville*, ___ Va. ___, ___ (July

7, 2022) (quoting *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 514 (2014)). But we are not bound by the pleader's conclusions of law that are couched as facts. *Id.*

Fieldstone Townhome Association, Inc. is the homeowners' association for the Fieldstone townhome development, a residential community in Winchester consisting of 225 townhomes. One membership vote is allocated to the owners of each townhome. The association is managed by a board comprised of five directors elected by the members. The board of directors elects the association's officers: the president, vice-president, secretary, and treasurer.

In 2017, the association's members elected Theologis to serve a three-year term on the board of directors. In 2019, the board of directors elected him to serve as the association's president. The board reelected him in 2020 to serve as president through the end of his three-year term on the board.

The five defendants here are all Fieldstone townhome residents; some previously served on the board of directors. In July 2020, about two-dozen townhome residents, including three of the defendants, signed a petition to remove Theologis from the board. A special meeting of the association to consider that petition was scheduled for August 11, 2020.

In July 2020, four defendants—Daria Collins, Tricia James, Khai Wisler, and Mark Weiler—wrote a letter to their "Fellow Fieldstone" homeowners, urging them to vote Theologis out of office. That July 2020 letter listed various grievances about his performance as an officer and director. It said, for instance, that Theologis had "made repeated efforts to impose far more restrictive policies than provided for in the Covenants & By-Laws" and that he had "usurp[ed] the authority granted to the Board as a whole via the Covenant & By-Laws." At the special meeting, however, there were not enough votes against Theologis, so the removal effort fizzled.

Before a homeowners' association meeting on December 15, 2020, defendant Wisler wrote a social-media post on the website NextDoor, urging a fellow townhome resident to attend the

meeting and to voice her concerns about the association's operations. Wisler wrote that "Theologis is capricious in his enforcement of [HOA] policy (even as he has broken our HOA bylaws)." Wisler added that Theologis "should be leaving the board at that date and you should have more reasonable people on the review board."

Theologis filed a three-count complaint in the Circuit Court of Frederick County. Count I alleged that defendants Weiler, James, Collins, and Wisler defamed him when they circulated their July 2020 letter. Paragraph 62 of the complaint listed 24 separate statements in the letter that Theologis identified as defamatory. He attached the letter itself as Exhibit 1 to the complaint. Theologis requested $1 million in compensatory damages and $350,000 in punitive damages.

Count II alleged that Wisler's NextDoor post was also defamatory, for which Theologis sought $350,000 in compensatory damages and $350,000 in punitive damages against Wisler. The complaint attached Wisler's post as Exhibit 2.

Count III alleged that all five defendants conspired to injure Theologis in his trade, business, and occupation, in violation of the Virginia business-conspiracy statute, Code §§ 18.2-499 to 18.2-500. Theologis pleaded that he owns a real-estate-brokerage and property-management company in Frederick County and that he is a licensed attorney with a law practice in Virginia. He claimed that the defendants' actions injured his professional reputation by "preventing and hindering [him] from conducting his business in Fieldstone and in Frederick County." This is the only count against Janis Baldwin, who did not sign the allegedly defamatory statements about Theologis. Theologis alleged that Baldwin is a former member of the board of directors and a friend of defendant James and that Theologis had several disagreements with Baldwin about HOA rules and policies. Count III requested $1 million in compensatory damages and treble damages and attorney fees against all five defendants under Code § 18.2-500.

Each defendant filed a separate demurrer.  All five argued that Count III failed to state a business-conspiracy claim against them.  Defendant Baldwin argued that the statements at issue were not defamatory and that the complaint did not plead facts showing her participation in any scheme to defame Theologis.  The other four defendants argued that the complaint failed to identify the exact words alleged to be defamatory and that the statements, in any case, were not defamatory.

Two defendants—Weiler and James—also claimed that Theologis had failed to plead *New York Times* malice.[1]  They argued that Theologis was a limited-purpose public figure and that the complaint failed to show that the defendants knew that their statements were false or probably false.  Some but not all defendants also asserted the defense of common-interest privilege.

The circuit court heard argument on the demurrers, but no court reporter was present.  The court entered a final order reciting, "Defendants' demurrers are sustained with prejudice for the reason(s) stated by the Court at the hearing . . . , which are incorporated herein by reference."  The parties subsequently disagreed over the accuracy of Theologis's proposed written statement in lieu of a transcript.  *See* Rule 5A:8(c).  The circuit court entered a "written statement of facts" rejecting Theologis's proposed statement as "inaccurate" and clarifying that the court had sustained the demurrers on the grounds raised by each defendant.  Theologis timely appealed.

ANALYSIS

We exercise de novo review of the circuit court's decision sustaining the defendants' demurrers.  *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021).  The circuit court said that it sustained those demurrers on every ground raised by each of the five defendants.  The

---

[1] *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) (holding that the First Amendment "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not"); *Great Coastal Express, Inc. v. Ellington*, 230 Va. 142, 149 n.3 (1985) (distinguishing "*New York Times* malice" from "common-law malice, a different and broader concept"), *overruled in part on other grounds by Cashion v. Smith*, 286 Va. 327, 338 (2013).

- 4 -

defendants' arguments, however, were not all the same. For instance, only four defendants argued that the defamation claims were deficient for failing to plead the exact words used; Baldwin did not join in that argument. Only two defendants (James and Weiler) argued that the complaint was deficient for failing to plead *New York Times* malice. Only one defendant (Weiler) joined in the arguments of other demurrants (James and Wisler).[2]

We have an "obligation to decide cases on the best and narrowest grounds available." *Esposito v. Va. State Police*, 74 Va. App. 130, 134 (2022). Given the large number of issues presented here, we look for the best and *fewest* grounds on which to resolve this appeal.

Our selection of which issues to address is constrained by a long-standing feature of Virginia demurrer practice: we may affirm an order sustaining a demurrer only on a ground that the defendant raised in the trial court. *See* Code § 8.01-273(A). The appeal of an order sustaining a demurrer thus differs from other appeals in which "the right-result-different-reason doctrine" would allow an appellee to "assert for the first time on appeal a purely legal ground for upholding the challenged judgment." *Collins v. Commonwealth*, 297 Va. 207, 212 n.1 (2019).[3] Code § 8.01-273 prevents us from applying that doctrine to permit an appellee to benefit from an argument that he did not include in his *own* demurrer. The statute requires that each demurrant "state specifically the grounds on which the demurrant concludes that the pleading is insufficient at law," and "[n]o grounds other than those stated specifically in the demurrer shall be considered by the court." Code § 8.01-273(A) (emphasis added).

---

[2] Although "[a] demurrer may be amended as other pleadings are amended," Code § 8.01-273(A), no defendant sought leave to file an amended demurrer to include or incorporate another defendant's argument.

[3] *See generally Robert & Bertha Robinson Family, LLC v. Allen*, 295 Va. 130, 141 (2018) ("We recognize that an 'appellee is free to defend its judgment on any ground' supported by the record, 'whether or not that ground was relied upon, rejected, or even considered by the [circuit] court' so long as additional factual findings are unnecessary." (alteration in original) (quoting *Perry v. Commonwealth*, 280 Va. 572, 581 (2010))).

Our Supreme Court has repeatedly applied this statute to bar consideration on appeal of an argument that was not included in the defendant's demurrer. *See, e.g.*, *TC MidAtlantic Dev., Inc. v. Commonwealth, Dept. of Gen. Servs.*, 280 Va. 204, 214 (2010); *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 136 (2000). This rule dates to the turn of the last century. *See* 1899-1900 Va. Acts ch. 100. The Supreme Court has called this pleading requirement "a wise one that should be upheld and enforced as it is written," adding that the statute's "salutary purpose would be defeated and the statute practically abrogated if it were permissible to modify it by ingrafting exceptions upon it." *Saunders v. S. Ry. Co.*, 117 Va. 396, 399 (1915).[4] In light of the statute's clear language and history, we cannot affirm the dismissal of the complaint as to one demurrant based on an argument advanced only by a different demurrant.

With these considerations in mind, we have determined that the best-and-narrowest ground here is that the statements about which Theologis complains were not defamatory. All five defendants raised that argument on demurrer. Because we agree that the statements lacked sufficient "sting" to be actionable, we find that the trial court properly dismissed the defamation claims, together with the business-conspiracy claim that depended on defamation as the predicate tort.[5]

---

[4] When Title 8 was recodified, the revisors carried forward this requirement in Code § 8.01-273 "to prevent the demurrant from presenting, on appeal, grounds for the demurrer not relied on before the trial court." *See* Va. Code Comm'n, *Revision of Title 8 of the Code of Virginia*, H. Doc. No. 14, at 186 (1977).

[5] We therefore express no opinion on the other issues raised by Theologis: whether the defamation claims were deficient for failing to plead the exact words used (Assignments of Error 1-2); whether the statements were non-actionable expressions of opinion (Assignments of Error 4, 6); whether the complaint pleaded facts sufficient to establish *New York Times* malice or to overcome the common-interest privilege; and whether those issues could be reached on demurrer (Assignments of Error 9, 10).

*A. The defamation claims fail against all defendants because the statements lacked sufficient "sting" to harm Theologis's reputation (Assignments of Error 3, 5).*

Not all false and disparaging statements about a person are defamatory. "A statement must contain the requisite defamatory sting to be actionable." *Bryant-Shannon v. Hampton Roads Cmty. Action Program, Inc.*, 299 Va. 579, 585 (2021). The trial court has the "gatekeeping function" to determine as a matter of law "whether a statement is reasonably capable of defamatory meaning before allowing the matter to be presented to a finder of fact." *Schaecher v. Bouffault*, 290 Va. 83, 94 (2015). In evaluating whether a statement carries enough sting, courts "take all inferences in favor of the plaintiff, but such inferences cannot rise above the language of the documents or statements themselves." *Id.* at 93.

To have the requisite sting requires language that "tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Id.* at 92 (quoting *Moss v. Harwood*, 102 Va. 386, 392 (1904)). By contrast, "'language that is insulting, offensive, or otherwise inappropriate, but constitutes no more than "rhetorical hyperbole"' is not defamatory." *Id.* (quoting *Yeagle v. Collegiate Times*, 255 Va. 293, 296 (1998)).

The Supreme Court held in *Schaecher* that accusing someone of violating an ordinance or breaching an easement, covenant, or contract generally does not carry sufficient sting to be actionable as defamation. *Id.* at 94-98. The plaintiff in that case, Schaecher, was seeking a special-use permit to open a kennel. The project was opposed by her "nearby neighbor," Bouffault, who also happened to be a member of the local planning commission. *Id.* at 89. Schaecher sued Bouffalt for defamation after Bouffalt sent various emails to her fellow planning-commission members, claiming that the kennel plans would "not comply with easements, covenants, or ordinances." *Id.* at 94. Schaecher claimed that the emails defamed her by

- 7 -

depicting her as a "law breaker or a person of disregard for . . . legal obligations." *Id.* (alteration in original).

But the Court found that none of Bouffault's statements carried the requisite sting. The violation of an easement would "not as a general principle carry the 'sting' of a reprehensible crime." *Id.* at 95. "The mere implication that one might be in violation of an easement, absent more—such as inflammatory language or context to suggest that the statement causes particular harm to one's reputation—does not rise to the level of defamation." *Id.* The same was true for the alleged "violation of covenant restrictions." *Id.* "Covenant restrictions are contractual in nature, and the breach of a contract does not necessarily bring with it defamatory connotation." *Id.* (citation omitted). The Court did "not hold that accusations of violations of covenants or easements are never defamatory as a matter of law, merely that they are not inherently defamatory." *Id.* So too for the alleged violation of local ordinances. While in "some contexts" an accusation that the plaintiff violated an ordinance might carry defamatory sting, the ordinance there involved a land-use restriction. *Id.* Violating *that* ordinance was insufficient to "render the plaintiffs odious, infamous, or ridiculous, or otherwise subject them to contempt, shame, scorn, or disgrace." *Id.*

The same is true of the alleged defamatory statements here, almost all of which allege that Theologis failed to properly apply or follow various provisions of the Fieldstone Townhome Association's "Governing Documents." At oral argument, we asked Theologis to list the five most defamatory statements of the 26 itemized in the complaint. He identified the following—all from the July 2020 letter—alleging that he violated or failed to apply the association's "Covenants" and "By-Laws":

| Complaint ¶ | Verbatim text from the July 2020 letter (Exhibit 1) |
| --- | --- |
| 62(f) | "[Theologis] has made repeated efforts to impose far more restrictive policies than provided for in the Covenants & By-Laws.  Examples are . . ." |
| 62(g) | ". . . absurdly stringent yet disparately applied enforcement of 'violations' as seen through his adversarial view." |
| 62(j) | [Theologis] "at times exclud[ed] [fellow board members] from board decision-making altogether," |
| 62(k) | "thereby usurping the authority granted to the Board as a whole via the Covenants & By-Laws." |
| 62(o) | Stating that Theologis "[s]cheduled a special board meeting using dubious circumvention of proper guidelines for doing so as outlined in the Covenants & By-Laws." |

We will assume for argument's sake that these were false statements of fact, rather than non-actionable expressions of opinion.  *See generally Cashion v. Smith*, 286 Va. 327, 336-37 (2013).  Even so, it is "not apparent on the face of the document how this violation would render the plaintiff[] odious, infamous, or ridiculous, or otherwise subject [him] to contempt, shame, scorn, or disgrace."  *Schaecher*, 290 Va. at 95.

Fieldstone's governing documents, like the covenant restrictions in *Schaecher*, are "contractual in nature."  *Id.*; *see Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 284 Va. 409, 419 (2012) ("A declaration pursuant to the [Property Owners' Association] Act is 'a contract entered into by all owners' of the lots in the subdivision it governs." (quoting *Sully Station II Cmty. Ass'n, Inc. v. Dye*, 259 Va. 282, 284 (2000))).  So like Schaecher's alleged violation of covenants and easements, Theologis's alleged misapplication of the association's governing documents is not inherently defamatory and does not stigmatize him as a "law breaker." *Schaecher*, 290 Va. at 95-96.

"As with all evaluations of defamatory statements, . . . context is of the utmost importance," *id.* at 101, but the context here only weakens Theologis's claim.  Theologis had assumed a leadership position as president of the homeowners' association.  The defendants' statements were criticisms of his performance in that role before a meeting at which association

members would vote whether to remove him from the board. Statements tailored to whether Theologis properly followed the association's governing documents were germane to that purpose. The "context" thus fails to transmute those statements into something sufficiently sinister or odious to be actionable as defamation. While Theologis may have found his fellow members' criticisms of his management style "insulting, offensive, or otherwise inappropriate," the statements were not so inflammatory as to disgrace him "in the common estimation of mankind." *Id.* at 92 (first quoting *Yeagle*, 255 Va. at 296; then quoting *Moss*, 102 Va. at 392).[6]

Nor does the complaint plead facts showing that, by innuendo, those criticisms crossed the line into calumny. "In the law of defamation, an innuendo is the plaintiff's explanation of a statement's defamatory meaning when that meaning is not apparent from the statement's face." *Innuendo*, *Black's Law Dictionary* (11th ed. 2019). "For example, the innuendo of the statement 'David burned down his house' can be shown by pleading that the statement was understood to mean that David was defrauding his insurance company . . . ." *Id.* The complaint here alleges that Theologis is a Virginia lawyer and that he owns a real estate company that manages three rental properties owned by clients who live in Fieldstone. Although none of the defendants'

---

[6] The other 21 allegedly defamatory statements identified in the complaint—but which Theologis did not include in his "top five" list—likewise carry insufficient sting to be actionable. Three of them similarly allege that Theologis violated the association's governing documents or rules. Compl. ¶¶ 62(c), (p), 73(a). Seventeen are statements asserting that Theologis's leadership or communication style as president was poor, adversarial, or detrimental to the best interests of the homeowner's association. Compl. ¶¶ 62(a), (b), (d), (e), (h), (i), (l), (n), (q), (r), (s), (t), (u), (v), (w), (x), 73(b). Those statements do "not meet the threshold for defamatory 'sting' to engender disgrace, shame, scorn, or contempt, or to render one odious, infamous, or ridiculous." *Schaecher*, 290 Va. at 102. And the remaining statement said that Theologis's "behavior extends to an ongoing failure to communicate properly with homeowners as well, often to the point of *appearing* to be purposefully deceptive." Compl. ¶ 62(m) & Ex. 1 (emphasis added). Like one of the statements found non-actionable in *Schaecher*, 290 Va. at 101 ("not *totally* truthful"), this statement fails to carry sufficient sting because it "hedges," *id.* Also, the context communicates that the statement was tied to Theologis's alleged "failure to communicate properly" with homeowners. The hedged statement was thus "married to a single and relatively benign" complaint about Theologis's overall communication style. *Id.* at 102.

statements mentioned those jobs, Theologis claims that their statements injured his reputation in those occupations by implying that he was professionally unfit.

Those allegations do not supply "sufficient innuendo to imply defamatory meaning." *Schaecher*, 290 Va. at 93.

> [T]he meaning of the alleged defamatory language can not, by innuendo, be extended beyond its ordinary and common acceptation. The province of the innuendo is to show how the words used are defamatory, and how they relate to the plaintiff, but it can not introduce new matter, nor extend the meaning of the words used . . . .

*Id.* (quoting *Webb v. Virginian–Pilot Media Cos.*, 287 Va. 84, 89-90 (2014)). While the defendants' statements criticize Theologis's performance as an association officer and director, they do not impugn his integrity as a lawyer or private-property manager, let alone mention those occupations. Theologis failed to plead facts showing that the defendants' statements would be recognized by readers as an attack on his law practice or his property-management business. Because "innuendo may not extend beyond the meaning of the words in the statement," *id.* at 96, the complaint's allegations about Theologis's other jobs fail to make actionable the defendants' statements about his leadership in the association.[7]

B. *The business-conspiracy count fails because the defamation claims fail (Assignments of Error 7-8).*

Count III of Theologis's complaint seeks treble damages and attorney fees against all five defendants under Code §§ 18.2-499 and 18.2-500. He claims that their conduct violated the business-conspiracy statute because the defendants "willfully and maliciously [injured him] in

---

[7] Theologis did not argue on brief in the trial court that any fiduciary duties he had as president of the Fieldstone Townhome Association affect the lens through which a court should evaluate whether the statements were defamatory. Nor did the parties brief (1) the existence and scope of the fiduciary duties of a homeowners' association president, or (2) whether those duties affect the "sting" of an allegation that the association's president breached the association's governing documents. Thus, we express no views on those questions. *See* Rule 5A:18.

his reputation, trade, business or profession." Code § 18.2-499(A). All five defendants demurred to Count III arguing (among other things) that Theologis's conspiracy claims were conclusory and insufficient to show a violation of the statute.

"[A]ctions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious." *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 215 (2014). "[C]onspiracy allegations . . . do not set forth an independent cause of action; instead, such allegations are sustainable only after an underlying tort claim has been established." *Id.* (quoting *McCarthy v. Kleindienst*, 741 F.2d 1406, 1413 n.7 (D.C. Cir. 1984)). In this case, the sole tortious conduct alleged by Theologis is the sending of the July 2020 letter, which Theologis asserted "had the purpose and intent and effect of injuring [his] reputation." Compl. ¶ 83; *see also* Theologis Reply Br. 17 (claiming "[t]he dissemination of the defamatory Letter affected Appellant's ongoing business relationships in Fieldstone").

Assuming without deciding that a statutory business-conspiracy claim could piggyback on the defamation claims made here,[8] the circuit court did not err in dismissing the conspiracy claim. Because Theologis failed to state a claim for defamation, he necessarily failed to state a claim for business conspiracy, as his conspiracy claim hinged on defamation as the predicate tort. *See, e.g.*, *Davis v. Roessler*, No. 1:20-cv-992 (RDA/TCB), 2022 WL 195496, at *7 (E.D. Va. Jan. 21, 2022) (Alston, J.) ("Plaintiff's conspiracy claim is inextricably linked to his underlying

---

[8] *Cf. Andrews v. Ring*, 266 Va. 311, 319 (2003) (holding that "the word 'reputation'" in Code § 18.2-499, given "its association with 'trade, business or profession[,]' requires the exclusion of personal reputation and interest in employment from the scope of the statute's coverage"); *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012) ("But because 'injury to personal reputation ordinarily causes damage to one's business or profession, nearly every defamation action would fall within' the statute's ambit if we permitted such claims to proceed. Virginia's business conspiracy statute was not designed to provide treble damages for defamation suits cloaked as conspiracy claims." (citation omitted) (quoting *Moore v. Allied Chem. Corp.*, 480 F. Supp. 364, 375 n.3 (E.D. Va. 1979))).

- 12 -

defamation claims, which do not state a valid claim for relief.  And without a valid underlying tort claim, a conspiracy claim cannot survive.").[9]

### C. The record contains no request by Theologis for leave to amend (Assignment of Error 11).

Theologis argues that the circuit court erred when it dismissed his complaint "with prejudice," thereby denying him a chance to cure the pleading defects by filing an amended complaint.[10]  We review a circuit court's grant or denial of leave to amend a pleading under an abuse-of-discretion standard.  *Bennett v. Sage Payment Solutions, Inc.*, 282 Va. 49, 54 (2011).  Theologis correctly notes that Rule 1:8 provides that "[l]eave to amend should be liberally granted in furtherance of the ends of justice."  And "a trial court's decision refusing leave to amend after a showing of good cause is, in ordinary circumstances, an abuse of discretion." *Ford Motor Co. v. Benitez*, 273 Va. 242, 252 (2007).

But the Supreme Court has also made clear that an appellant may not assert error to the denial of leave to amend when, as here, "[t]he record contains no request . . . for leave to amend . . . or a proposed . . . amended complaint."  *TC MidAtlantic*, 280 Va. at 214; *see also Legg v. Sch. Bd. of Wise Cnty.*, 157 Va. 295, 301 (1931) ("The trial court did not err in sustaining the demurrers of both defendants; and as no request for leave to amend has been asked, the judgment of the court giving final judgment for the defendants is affirmed.").  Theologis conceded at oral

_____

[9] Count III, the only count that named Baldwin as a defendant, likewise failed to state a business-conspiracy claim against her.  (Assignment of Error 8.)  The complaint failed to allege any facts to show that Baldwin authored any of the allegedly defamatory statements or that she participated in the alleged conspiracy to injure Theologis's reputation.  Theologis did not meet his pleading obligations by alleging that Baldwin served as a fellow member of the board and was James's "friend."  And as already noted, Baldwin included in her demurrer the other defendants' successful argument that the statements in question here "are not defamatory."

[10] Theologis misstates in this assignment of error that the circuit court failed "to set forth . . . the grounds for granting the demurrers."  The circuit court's "written statement of facts" recited that the court "granted the demurrers filed by each defendant on the specific grounds presented."

argument that the record contains no indication that he ever asked for leave to amend, either before or after the trial court sustained the demurrers. He likewise did not object to the circuit court's failure to grant leave to amend. *See* Rule 5A:18. So we cannot say that the circuit court abused its discretion when it sustained the demurrers without leave to amend.

CONCLUSION

The circuit court correctly found that the statements in question carried insufficient sting to be defamatory. The court therefore did not err in dismissing the defamation claims, together with the business-conspiracy claim that depended on defamation as the predicate tort. And because Theologis failed to request leave to amend, the court did not abuse its discretion when it dismissed his complaint "with prejudice."

*Affirmed*.